Brandon LEONARD, by his parents
and next friends, Thomas & Mary
LEONARD, et al., Appellants,

v.

Floretta McKENZIE, Superintendent,
D.C. Public Schools, et al.

No. 88–7084.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 21, 1989.

Decided March 17, 1989.

Matthew B. Bogin, with whom Michael J. Eig, Washington, D.C., and Margaret A. Kohn were on the brief, for appellants.

Susan S. McDonald, with whom Frederick D. Cooke, Jr. and Charles L. Reischel, Washington, D.C., were on the brief, for appellees.

Before STARR, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This appeal involves a dispute over the appropriate educational placement for Brandon Leonard under the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401–1461 (1982 & Supp.1986) ("EAHCA" or "the Act"). Before the District Court, appellants challenged a hearing officer's determination that the Prospect Learning Center in Washington, D.C. was the appropriate placement for Brandon. The District Court first denied the Leonards' motion for a preliminary injunction which would have required D.C. authorities to maintain Brandon's "placement" at the Lab School of Washington during the ensuing litigation, and later affirmed the hearing officer's determination on the merits. For the following reasons, we affirm.

I

Brandon Leonard is a thirteen-year-old who suffers from serious learning disabilities and related emotional problems. Brandon is therefore considered "handicapped" within the meaning of the EAHCA, and is therefore eligible for a "free appropriate public education" to be provided by his State of residence—in this case, the District of Columbia. *Id.* at § 1412(1). In December 1984, due to difficulties experienced by Brandon in a D.C. public school, Brandon's parents requested that he be evaluated for special education services under the Act. At the end of this evaluation process, an Individualized Educational Program ("IEP") meeting was held in order to formulate an educational plan to meet

Brandon's special needs. *See id.* at § 1401(a)(19).[1]

In August 1985, the District of Columbia Public Schools ("DCPS") assigned Brandon to Prospect Learning Center, a full-time public elementary school program specially designed for learning disabled children. The Leonards subsequently sought an administrative hearing, contending that the Lab School of Washington, rather than Prospect, was the appropriate placement for Brandon. *See id.* at § 1415(b)(2). The Leonards enrolled Brandon at the Lab School for the 1985–86 school year and awaited the outcome of their due process hearing.

In December 1985, a hearing officer determined that both Prospect and the Lab School offered programs that were appropriate to meet Brandon's educational and related service needs. *See* Hearing Officer's Determination of December 23, 1985, at 6; Joint Appendix at 92. Under normal circumstances, this finding would have led to Brandon's placement at Prospect, since the Act does not compel a State (or, as in this case, the District of Columbia) to pay for a private school education when an appropriate public school education is available. *See* 34 C.F.R. § 300.403 (1987). Here, however, the hearing officer found that DCPS had committed a number of procedural violations, including the issuance of a defective Notice of Placement. For these reasons, and in light of Brandon's attendance (for four months at that time) at the Lab School, the hearing officer determined:

> [Brandon] shall remain in his current school placement (Lab School) for the academic year 1985–86 with all costs incurred to be the responsibility of DCPS. DCPS should begin to plan for [Brandon's] return to DCPS for the 1986–87 school year. I would strongly encourage DCPS personnel, Lab School personnel, and the parents to work cooperatively

toward a successful transition of [Brandon] to Prospect or another program found to be appropriate for 1986–87.

Hearing Officer's Determination of December 23, 1985, at 6; J.A. at 92. No appeal was taken from this determination.

On June 16, 1986, DCPS sent a form letter to the Leonards which stated that DCPS intended to continue to pay Brandon's tuition at the Lab School for the 1986–87 school year. On July 30, however, DCPS sent the Leonards a Notice of Placement which stated that Brandon would be placed at Prospect for the 1986–87 school year. A subsequent letter from DCPS explained that the June 16 letter had been sent as a result of computer error (a point the Leonards do not dispute). In the wake of this *volte face*, the Leonards requested a due process hearing to examine: (1) whether DCPS could legally place Brandon at Prospect after issuing the June 16 letter, and (2) whether Prospect was the appropriate placement for Brandon. At the conclusion of that proceeding, the hearing officer found no procedural violations and reaffirmed the earlier determination that Prospect was an appropriate placement. *See* Hearing Officer's Determination of December 12, 1986, at 8–9; J.A. at 83–84.

Brandon continued to attend the Lab School throughout the 1986–87 school year. In the meantime, the Leonards brought suit in federal district court to challenge the hearing officer's determination. In due course, they sought a preliminary injunction compelling DCPS to continue paying Brandon's tuition at the Lab School during the litigation. *See* 20 U.S.C. § 1415(e)(3). In separate orders, the District Court first denied the request for injunctive relief (in July 1987), and later affirmed the hearing officer on the merits (in February 1988). *See Leonard v. McKenzie*, No. 87 Civ. 56, mem. op. (D.D.C. July 9, 1987) (denying preliminary injunction); J.A. at 7; *Leonard v. McKenzie*, No. 87 Civ. 56 (D.D.C. Feb.

---

**1.** "The IEP is in brief a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." *School Committee of the Town of Burlington v. Department of Education*, 471 U.S.

359, 368, 105 S.Ct. 1996, 2001–02, 85 L.Ed.2d 385 (1985). As such, it represents the *"modus operandi"* of the EAHCA. *Id.* The Act directs school officials, the child's teacher, the parent or guardian, and, if appropriate, the child to all participate in the joint formulation of the IEP.

22, 1988) (affirming hearing officer's decision); J.A. at 15; *Leonard v. McKenzie,* No. 87 Civ. 56 (D.D.C. Aug. 1, 1988) (denying appellants' motion for relief from judgment based on newly discovered evidence); J.A. at 27. This appeal followed.

## II

As we alluded to in the factual narrative, the EAHCA requires the District of Columbia, as a condition to receiving federal financial assistance, to offer a "free appropriate public education" to all handicapped children. 20 U.S.C. § 1412(1). Although the statute is not particularly detailed as to the meaning of "appropriate education," the Supreme Court has interpreted this pivotal term to mean that States must provide "a basic floor of opportunity" ... "individually designed to provide educational benefit to the handicapped child." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley,* 458 U.S. 176, 200, 201, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982); *see also Kerkam v. McKenzie,* 862 F.2d 884, 886–87 (D.C.Cir.1988) (applying *Rowley*). The Act does not require an educational program to "maximize the potential of handicapped children," but mandates, more modestly, one "sufficient to confer some educational benefit." *Rowley,* 458 U.S. at 189, 200, 102 S.Ct. at 3048; *Kerkam,* 862 F.2d at 886. "Thus, proof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act." *Kerkam,* 862 F.2d at 886.

The EAHCA sets forth substantial procedural requirements, including the right to be accompanied by counsel and to "confront, cross-examine, and compel the attendance of witnesses." *See* 20 U.S.C. § 1415(a)-(d). Compliance with these procedures will "in most cases assure much if not all of what Congress wished in the way of substantive content in a [child's IEP]." *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050.

*Rowley* sets forth a two-fold test to guide the review of a hearing officer's placement decision: first, "has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the

Act's procedures reasonably calculated to enable the child to receive educational benefit?" *Id.,* 458 U.S. at 206–07, 102 S.Ct. at 3051.

The appropriate standard to govern the judicial inquiry into educational placement decisions was also clearly delineated in *Rowley.* The Court focused on the express language of the EAHCA, which provides that a reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at 205, 102 S.Ct. at 3050 (quoting 20 U.S.C. § 1415(e)(2)). Although petitioners in *Rowley* (like appellants before us) argued that § 1415(e)(2) dictated "independent" review of administrative decisions, the Court held, instead, that the "preponderance of the evidence" standard did not give reviewing courts leave to "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206, 102 S.Ct. at 3051. *Rowley* further stated that the fact that the reviewing court was directed to receive records of the administrative proceedings implied that "due weight" should be given to those proceedings. *Id.*

Our own Circuit very recently applied the *Rowley*-enunciated standard in *Kerkam v. McKenzie, supra.* Deference was due the hearing officer, the court found, even though the "additional evidence" and "preponderance" aspects of § 1415(e)(2) indicate a less deferential standard than ordinarily obtains. *Id.,* 862 F.2d at 887. *Kerkam* also made clear that "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong." *Id.*

## III

The Leonards' initial claim is that DCPS failed to meet its procedural obligations under the EAHCA. In particular, appellants allege that DCPS committed a variety of procedural violations that warrant reversal of the decision to place Bran-

don at Prospect. None of the points gives us pause. The Leonards' first two claims, which we briefly describe in the margin,[2] involve the 1985–86 school year and are thus not relevant to Brandon's placement for 1986–87 (which is the relevant school year for this litigation). Their third claim—that DCPS did not take the lead in planning Brandon's transition to Prospect—is really a substantive challenge to the placement decision; it is not a "procedural" requirement recognized by the EAHCA. *Cf. infra* at 1562–1563 (discussing substantive challenge). In any event, the language of the Hearing Officer's report, on which the Leonards rely, is essentially hortatory and appears to reflect an understanding of transition procedures based on the practice in a nearby suburban jurisdiction, rather than any applicable statutory requirement. Fourth, the Leonards emphasize the erroneous Notice of Placement sent by DCPS on June 16, 1986 (stating that Brandon's placement for 1986–87 would be the Lab School). As to that matter, however, we agree with the hearing officer that no prejudice was worked by this error, since a corrective notice was mailed on July 31, 1986—well in advance of the 1986–87 school year.[3] *See* Hearing Officer's Determination of December 12, 1986, at 8; J.A. at 83. Appellants' fifth and sixth claims—that DCPS failed to place Brandon for the 1987–88 year in accordance with his IEP—had no bearing on the 1986–87 placement that was before the hearing officer, and are thus irrelevant to our review of that decision.

## IV

■ Apart from the foregoing procedural claims, the Leonards mount a broad substantive challenge to Brandon's placement. *First*, they claim that Prospect cannot implement Brandon's IEP as written. In particular, the Leonards argue that Lab School courses with the titles of "media center," "drama," "woodshop," and "academic club" are required by Brandon's IEP but are unavailable at Prospect. We believe this argument unduly exalts form over substance. The hearing officer specifically addressed this point, concluding that although Prospect did not offer courses with these particular titles, other available courses could be substituted which would serve the same underlying educational objectives. *See id.* at 8–9; J.A. at 83–84. The fact that Prospect offers "social studies" instead of "academic club" does not render Prospect incapable of implementing Brandon's IEP, especially in light of Prospect's emphasis on experiential methods of teaching. *See* Transcript at 111 (testimony of assistant principal of Prospect Learning Center); J.A. at 218. Indeed, the Leonards do not directly dispute DCPS's position that the subject matter of "academic club" at the Lab School and "social studies" at Prospect is highly similar. Although the Leonards may well have a different (and entirely reasonable) view of the optimal educational environment for Brandon, *see Kerkam*, 862 F.2d at 886–87, they have failed to demonstrate the critical proposition under the EAHCA, namely that Prospect cannot provide a program "reasonably calculated to enable [him] to receive educational benefits" in accordance with his IEP. *Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051; *Kerkam*, 862 F.2d at 886–87.

This court has clearly held that "[a]n IEP is not location-specific; the place at which

**2.** The two claims are DCPS's failure to provide special education within 50 days as required by *Mills v. Board of Educ.*, 348 F.Supp. 866 (D.D.C. 1972), and the defective Notice of Placement for 1985–86.

**3.** Appellants suggest that "prejudice" was an inappropriate criterion to guide the hearing examiner's analysis. Reply Brief for Appellants at 2–4. We find the hearing officer's approach unexceptional. Unlike the defective Notice of Placement for 1985–86, *see supra* n. 2, the error in the June 16, 1986 Notice was entirely one of inadvertance. While we do not address wheth-
er *legal errors* (in the form of violations of EAHCA's procedural requirements) are to be subject to a separate test of "prejudice," we think that inquiry appropriate in a situation where, as here, the error did not violate any EAHCA provisions or attendant regulations. *Cf.* 34 C.F.R. § 300.505 (regulation allegedly violated by DCPS's computer error). In short, we see no reason to overturn the hearing officer's placement decision on the basis of an administrative foul-up that neither violated the Act's procedural requirements nor affected appellants in any appreciable way.

an IEP is implemented may change without the IEP itself changing." *Abney v. District of Columbia,* 849 F.2d 1491, 1492 n. 1 (D.C.Cir.1988). Here, however, DCPS subscribed to an IEP fashioned on Lab School forms and framed in terms specifically relating to Lab School curriculum (*e.g.,* "academic club"). This practice is unfortunate. In this case, it has needlessly given rise to a set of highly specific factual disputes concerning the precise nature of academic (and other) courses at the Lab School and Prospect. At oral argument, counsel for the District indicated that DCPS has been made aware of the need to construct a more functionally-related IEP. We assume that counsel's advice will henceforth be followed by DCPS, so as to curb the proliferation of unnecessary issues in EAHCA litigation.

■ *Second,* the Leonards claim that the District Court did not adequately take into account the negative effects on Brandon of the transition from the Lab School to Prospect. But a threshold difficulty stands in the way of this point. As appellees suggest, it appears that the "transition" issue was not raised before the hearing examiner in the first instance. *See* Hearing Officer's Determination of December 12, 1986, at 3, 5 (noting issues and contentions raised by the parties, and noting the fact that the appellants called no witnesses); J.A. at 78, 80. Appellants' own papers suggest as much. *See* Brief of Appellants at 30 n. 28 (noting that "[t]he harmful timing of the placement change for [Brandon] was not stressed before Hearing Officer Sutler ..."). It is a familiar tenet that "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *see, e.g., Foundation of Economic Trends v. Heckler,* 756 F.2d 143, 156 (D.C.Cir.1985); *Washington Ass'n for*

*Television & Children v. FCC,* 712 F.2d 677, 680 (D.C.Cir.1983). Moreover, we do not consider appellees' failure to object to the presentation of "transition" evidence before the District Court as a "waiver" event, which would allow the Leonards to argue an issue not theretofore raised. *See* Reply Brief for Appellants at 6 n. 10. Two concerns, among others, informing the exhaustion doctrine are fairness to the agency and the orderliness of administrative practice and procedure; it would be both unfair and unwieldy to overturn the hearing officer's decision on grounds that she had no opportunity to consider or evaluate.[4]

In sum, we are satisfied that the hearing officer's placement decision was neither procedurally nor substantively in error. Our judgment in this regard is not altered by the "newly discovered evidence" presented to the District Court pursuant to appellants' Rule 60(b) motion for relief from judgment. *See* Fed.R.Civ.P. 60(b)(2). As appellees correctly point out, we are without jurisdiction to review the District Court's order denying the 60(b) motion since appellants failed to file a notice of appeal from this order. *See Browder v. Director, Illinois Dep't of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978).

## V

■ Finally, appellants contend that the District Court erred in not granting a preliminary injunction to maintain Brandon's placement at the Lab School during the administrative and judicial proceedings. Section 1415(e)(3) provides that "[d]uring the pendency of any proceedings conducted pursuant to [section 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child...." As the District Court recognized, the issuance of an injunction under this "stay put" provision

---

4. While we recognize that "this well-established exhaustion doctrine is ultimately an exercise of judicial discretion," *Foundation on Economic Trends,* 756 F.2d at 156; *see McKart v. U.S.,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), we do not think it at all unjust to foreclose appellants from advancing arguments before the courts which they could have raised before the hearing officer.

depends predominantly on the determination of what constitutes Brandon's "current educational placement." *See Leonard v. McKenzie,* No. 87 Civ. 56, mem. op. at 4 (D.D.C. July 9, 1987); J.A. at 10.

Although we review this issue of law *de novo, see, e.g., Nepera Chemical, Inc. v. Sea–Land Service,* 794 F.2d 688, 699 (D.C. Cir.1986), we do not disagree with the District Court's disposition. In the earlier due process hearing in which the Leonards challenged Brandon's placement for the 1985–86 school year, the hearing officer found Prospect "appropriate" but allowed Brandon to complete the year at the Lab School because of procedural violations committed by DCPS. *See supra* pages 1560. The hearing officer's opinion at that earlier stage clearly indicated, however, that Brandon's placement at the Lab School was for the 1985–86 year only; all parties (DCPS, Lab School, and appellants) were encouraged to prepare for Brandon's transition to Prospect for 1986–87. *See id.* Thus, appellants were on notice that the Lab School would cease to be Brandon's

"current educational placement" once the 1985–86 school year ended.

In light of these circumstances, DCPS is not compelled to fund appellants' unilateral decision to maintain Brandon at the Lab School during the course of his challenge to the 1986–87 placement decision. *See Zvi D. v. Ambach,* 694 F.2d 904, 907–08 (2d Cir.1982) (authorization for payment of private school tuition because of procedural violation does not constitute "educational placement" for purposes of stay-put provision).[5]

For the foregoing reasons, we uphold each of the District Court orders appealed here.

AFFIRMED.

---

**5.** Of course, the Supreme Court's statement that "[t]he language of § 1415(e)(3) is unequivocal," *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 604, 98 L.Ed.2d 686 (1988), is not apposite in a case, as here, in which the placement appellants desire is not the child's "current educational placement."