877 F.2d 1018
 103 A.L.R.Fed. 105, 278 U.S.App.D.C. 230,
54 Ed. Law Rep. 784
 Joshua ANDERSEN, by his parents and next friends William T.
and Roxanna N. ANDERSEN, et al., Appellants
v.
DISTRICT OF COLUMBIA, a municipal corporation, et al.
David McADOO, by his next friend Harriette McADOO, and
Harriette E. McAdoo, Appellants
v.
Andrew JENKINS, Superintendent, D.C. Public Schools and the
District of Columbia.
Jason McMULLEN, by his parents and next friends Edward and
Karen McMULLEN, et al., Appellants
v.
Andrew JENKINS, Superintendent, D.C. Public Schools and the
District of Columbia.
James BOWERS, by his mother and next friend Marva BOWERS, et
al., Appellants
v.
Andrew JENKINS, Superintendent, D.C. Public Schools, et al.
 Nos. 88-7150, 88-7158, 88-7159 and 88-7160.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 14, 1989.
Decided June 23, 1989.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action Nos. 87-00297, 86-00922, 87-00055, and 87-00139).
 Michael J. Eig, with whom Matthew B. Bogin and Margaret A. Kohn were on the brief, for appellants in Nos. 88-7150, 88-7158, 88-7159 and 88-7161.
 Martin B. White, Asst. Corp. Counsel, Washington, Dist. of Columbia, for appellees in Nos. 88-7150 and 88-7159.
 Susan S. McDonald, Asst. Corp. Counsel, Washington, Dist. of Columbia, for appellees in Nos. 88-7158 and 88-7161.
 Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, Dist. of Columbia, were also on the brief, for appellees in Nos. 88-7150, 88-7158, 88-7159 and 88-7161.
 Before RUTH BADER GINSBURG, BUCKLEY and WILLIAMS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.
 STEPHEN F. WILLIAMS, Circuit Judge:
 
 
 1
 To be eligible to receive federal grants under the Education for All Handicapped Children Act, 20 U.S.C. Secs. 1400 et seq. (1982 & Supp.1986), a state or the District must offer a "free [and] appropriate public education" for all handicapped students. 20 U.S.C. Sec. 1412(1). Unless it meets the obligation by providing appropriate public education, it must bear the expense of a private facility. Id. at Sec. 1413(a)(4)(B); see also School Comm. of Town of Burlington v. Department of Educ. of Massachusetts, 471 U.S. 359, 369-71, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); 34 C.F.R. Sec. 300.403(a) (1988); D.C.Mun.Regs. tit. 5, Sec. 3015.1 (1987). The appellants, four children with learning disabilities and their parents, seek reimbursement from the District of Columbia Public Schools for the expenses of the children's education at private specialized schools. Before a hearing officer and the district court they claimed unsuccessfully that the educational placements offered by the District for the years in primary dispute were not "appropriate" within the meaning of the Act. On these issues we affirm the district court for substantially the reasons it stated; we find nothing in the record to convince us that the plaintiffs successfully shouldered the burden of persuading the court that the hearing officers were wrong. See Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C.Cir.1988). In this opinion we address several legal theories (raised in most instances by all or nearly all the appellants) under which they might secure reimbursement from the District regardless of the substantive adequacy of the education it offered.
 
 
 2
 Joshua Andersen, James Bowers, Jason McMullen and David McAdoo are learning disabled children whose ages range from eleven to eighteen years; all parties agree that they meet the EAHCA's definition of "handicapped." See 20 U.S.C. Sec. 1401(1). Andersen, Bowers and McMullen involve disputes over the appropriateness of DCPS's proposed placements for the 1986-87 school year; the McAdoo case involves a similar dispute concerning the placement proposed for 1985-86. The facts of David McAdoo's case differ slightly from those in the other three cases, so we will detail his case after summarizing the facts common to the others.
 
 
 3
 For school year 1986-87 the school district proposed that each of the three be placed in public schools for learning disabled children--Buchanan Learning Center, a secondary school, for Joshua Andersen and James Bowers, and Prospect Learning Center, an elementary school, for Jason McMullen. The parents rejected the school district's proposed placements and enrolled their children in private facilities providing full-time special education programs. The two older boys were enrolled in Chelsea School, a private high school in Silver Spring, Maryland, and Jason McMullen continued at the Lab School of Washington, a private school for learning disabled children, which he had attended for several months before his parents requested placement by the school district.
 
 
 4
 The parents requested hearings under the Act, known as "due process hearings," to contest the appropriateness of DCPS's proposed placements. See 20 U.S.C. Sec. 1415 (describing the procedural requirements of the EAHCA); 34 C.F.R. Secs. 300.506 et seq. (regulatory requirements); D.C.Mun.Regs. tit. 5, Sec. 3022 (same). They prevailed, and the school district was ordered to pay the children's tuition at the private school programs for varying periods of time. Later DCPS again proposed placements at the same public schools for the children; on this round the hearing officer found them appropriate. The plaintiffs appealed to the district court, which upheld the administrative decisions. See Andersen v. District of Columbia, No. 87-0297, 1988 WL 33506 (D.D.C. Mar. 30, 1988); Bowers v. McKenzie, No. 87-0139, 1988 WL 28354 (D.D.C. Mar. 16, 1988); McMullen v. McKenzie, No. 87-0055, 1988 WL 60356 (D.D.C. Feb. 18, 1988). The district court also denied plaintiffs' post-trial motions that it require DCPS to fund the children's private education for the years after 1986-87 and that it issue "stay-put" injunctions under 20 U.S.C. Sec. 1415(e)(3) that would have allowed the students to remain at DCPS's expense in their "current educational placements," the private schools, pending review by this court. See Andersen v. District of Columbia, No. 87-0297 (D.D.C. June 9, 1988); Bowers v. McKenzie, No. 87-0139, 1988 WL 63067 (D.D.C. June 7, 1988); McMullen v. McKenzie, No. 87-0055, 1988 WL 60356 (D.D.C. June 2, 1988).
 
 
 5
 David McAdoo's case differs in that DCPS has never borne the expense of his private education. In March 1985 it proposed a part-time special education program at its Lafayette Elementary School for the remainder of the 1984-85 academic year; the McAdoos requested a hearing. On July 23, 1985, DCPS proposed a full-time program at Buchanan for 1985-86. Again, the parents requested a hearing; in the fall semester of 1985, before the hearing, David began attending the Lab School of Washington.
 
 
 6
 In October 1985 a hearing officer determined that Buchanan was an appropriate placement for David. The McAdoos appealed this decision to the district court, which affirmed the administrative ruling. McAdoo v. McKenzie, No. 86-0922, 1988 WL 9592 (D.D.C. Jan. 28, 1988). The plaintiffs filed post-trial motions similar to those of the other families; they were denied. McAdoo v. McKenzie, No. 86-0922, 1988 WL 60367 (D.D.C. May 31, 1988).
 
 
 7
 Arguments Abandoned in the Light of Leonard v. McKenzie
 
 
 8
 At oral argument, the plaintiffs withdrew several of their arguments in light of our recent decision in Leonard v. McKenzie, 869 F.2d 1558 (D.C.Cir.1989). First, the McMullens had argued that Prospect could not be appropriate because it did not provide services and programs with labels that corresponded to the terminology used in Jason's "Individualized Educational Program" or "IEP," a statement required by the Act and intended to state a handi capped child's educational needs and the instruction and services designed to meet them. See School Comm. of Town of Burlington, 471 U.S. at 368, 105 S.Ct. at 2001. Under Leonard, the fact that the school district has subscribed to an IEP fashioned on the forms of a private school and expressed in its curricular jargon does not render equivalent services provided by a public school inappropriate. See Leonard, 869 F.2d at 1563. The hearing officer need only find that the public school program meets the underlying educational objectives of the IEP, as he did here.
 
 
 9
 Second, all the plaintiffs cited procedural errors committed by the school district relating to academic years prior to the ones at issue here. Leonard makes clear that such errors are irrelevant. Id. at 1562. While one can imagine a case where such an error might affect the substantive outcome for a later year, no one claimed such an impact here.
 
 
 10
 Third, all plaintiffs, except those in Bowers, contended that certain procedural errors of DCPS relating to the academic years at issue automatically entitled them to reimbursement for their children's private education, even though they offered no reason to believe the errors prejudicially affected the district's placement proposals or the final administrative decisions. In support of this claim, they cited the following passage of Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982):
 
 
 11
 When the elaborate and highly specific procedural safeguards embodied in Sec. 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid.
 
 
 12
 Id. at 205, 102 S.Ct. at 3050. In addition, they pointed to two Fourth Circuit cases that held placements to be inappropriate because the school district committed serious violations of the statutory procedures but that did not discuss the issue of prejudice, Board of Educ. of County of Cabell v. Dienelt, 843 F.2d 813, 814-15 (4th Cir.1988) (per curiam) (district did not perform multi-disciplinary review, conduct placement advisory meeting, or adequately involve parents); Spielberg v. Henrico County Pub. Schools, 853 F.2d 256, 259 (4th Cir.1988) (placement determined before IEP drafted), and one Fourth Circuit decision that explicitly found several procedural errors, including the school district's failure to inform parents of their rights or to prepare a sufficiently specific IEP, to be enough "by themselves" to overturn a placement, Hall v. Vance County Bd. of Educ., 774 F.2d 629, 635 (4th Cir.1985).
 
 
 13
 Although we do not reach the issue of when a procedural failing might invalidate a placement, we think the plaintiffs here are wise to have abandoned their arguments. The Fourth Circuit cases are themselves ambiguous, as the errors were ones that the court may have viewed as inherently carrying a very high probability of prejudice. The Eighth Circuit appears to insist on some reason to believe that an error caused prejudice. In Evans v. District No. 17 of Douglas County, Nebraska, 841 F.2d 824 (8th Cir.1988), it found the school district's failure to perform a required reevaluation could not have affected the placement and thus did not deny the child a "free and appropriate" education. It noted that its decision did not undermine the Act's procedural requirements, as the court could reimburse the parents for any added expense. Id. at 830-31; see also Kerkam, 862 F.2d at 888 n. 4 (suggesting that district court should consider "potentially prejudicial effect" of procedural errors on remand). The Leonard court left open the issue of whether violations of the Act's procedural requirements are "subject to a separate test of 'prejudice.' " 869 F.2d at 1562 n. 3. Nonetheless, as it found that the plaintiff was not prejudiced by DCPS's sending an erroneous Notice of Placement that was later corrected before the beginning of the school year in compliance with applicable regulations, it did not reverse the hearing officer's determination. Id. at 1562. The same "administrative foul-up" (id. at 1562 n. 3) is alleged in Andersen and McMullen as the only error relating to 1986-87; we agree with plaintiffs that Leonard disposes of the issue.
 
 
 14
 The violations identified in McAdoo are different; plaintiffs allege that DCPS did not provide them with adequate notice of certain procedures and caused various delays. McAdoo Brief for Appellants 21-22. The trial court held these defects to be "either spurious or harmless." McAdoo, Jan. 28, 1988 Opinion at 15. At oral argument, plaintiffs abandoned these arguments because counsel believed them insufficient under Leonard to warrant reversal. We need not decide this question, but we note that the errors are certainly far less likely to have affected the placements or the administrative decisions than those involved in the Fourth Circuit cases.
 
 
 15
 * * *
 
 
 16
 Of the issues that survive Leonard, one is common to all four of the present cases and another to all but one. We address these first, before turning to some issues unique to Bowers.
 
 
 17
 Availability of Relief for the Years Following the Academic Year Principally at Issue in the Litigation
 
 
 18
 In post-trial motions, plaintiffs asked the district court to order DCPS to bear the financial responsibility for the children's private school educations in the years following the ones directly relevant to the litigation--the outyears, as it were. They argued that such relief was warranted because the school district had failed to participate in annual reviews of the students' IEPs or to propose placements each year, thereby violating applicable regulations. See 34 C.F.R. Sec. 300.552(a)(1).[1] The district court rejected the motions, relying on Town of Burlington v. Department of Educ. of Massachusetts, 736 F.2d 773 (1st Cir.1984), aff'd, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).
 
 
 19
 In Town of Burlington the First Circuit noted that a school district should continue to review a child's IEP and revise his placement during administrative and judicial review of a contested placement. Without these annual reviews, "the court is faced with a mere hypothesis of what the [school district] would have proposed and effectuated during the subsequent years, an hypothesis which at the time of trial would have the unfair benefit of hindsight." Id. at 794. It suggested that this ongoing process might promote settlement of the pending litigation and that the IEPs and proposed placements would provide useful evidence when the court considered the relief appropriate for later years. Id.
 
 
 20
 The court nevertheless held that where the school district failed to meet these obligations "the losing party in the dispute over the [contested] IEP [or placement] will have the burden of producing evidence and persuading the court of changed circumstances that render the district court's determination as to the initial year inappropriate for guiding its order of relief for subsequent years." Id. at 795 (emphasis added, footnote omitted). We are persuaded, as was the district court, that the Town of Burlington test is the proper one to apply when attempting to fashion appropriate relief for subsequent years. If the handicapped child's circumstances continue unchanged, any placement that was appropriate for him in the initial year would continue to meet his educational needs in succeeding years. Although circumstances obviously may change, and often do, the nature or direction of change is unpredictable (except for the children's inevitable aging), so that a presumption of continuity seems most practical.
 
 
 21
 When we apply the test to the cases before us, we find no error in the district court's decisions. It clearly understood and applied Town of Burlington to the facts of these cases. It found that plaintiffs had produced insufficient evidence to prove that the circumstances of any of the students had changed during the pendency of the litigation. Nothing we have seen persuades us otherwise; thus we affirm the district court's decisions to deny relief for the later years.
 
 
 22
 DCPS argues that our decision could rest on another ground, namely that the plaintiffs did not exhaust their administrative remedies as to the outyears. As to the academic year principally at issue in a litigation, we have rigorously insisted on exhaustion. See Cox v. Jenkins, 878 F.2d 414, 415, 420-22 (D.C.Cir. 1989) (exhaustion required, and exception for futility available only where adverse decision is virtually certain). Plaintiffs here suggest, however, that for the outyears, the prospects of futility are inherently great: proceedings as to them are likely to be a mere replay of those relating to the lead year. In fact, however, in the one instance where the Town of Burlington rule allows the party that loses as to the lead year to prevail as to outyears (i.e., changed circumstances), any resulting administrative hearing would necessarily address new evidence; indeed, even the school district might agree that the prior IEP or placement proposal was no longer appropriate. At all events, a parent demand for a new IEP and placement would lead either to resolution of the parent-district conflict or to creation of a new and contemporaneous administrative record. Thus in a situation of changed circumstances, a requirement of exhaustion appears sensible. In the absence of any claims of such changes here, however, we need not finally resolve the issue.
 
 
 23
 Availability of a Stay-Put Injunction Following a District Court Decision
 
 
 24
 All the plaintiffs except the McAdoos[2] contend that the "stay-put" provision of the EAHCA, 20 U.S.C. Sec. 1415(e)(3), entitled them to an injunction requiring that the children remain at DCPS's expense in their current educational placements, the private schools, pending review by this court. The section reads as follows:
 
 
 25
 During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child ... until all such proceedings have been completed.
 
 
 26
 If the provision applies, injunctive relief is available without the traditional showing of irreparable harm. Plaintiffs argue that it applies until all administrative or judicial review is completed, including an appeal to this court and, as counsel explicitly urged at oral argument, any period during which a petition for certiorari to the Supreme Court is pending. We reject this view as inconsistent with the statutory language and the case law.
 
 
 27
 Subsection 1415(e)(3) states that a stay-put injunction shall be granted during "the pendency of any proceedings conducted pursuant to this section." The "section," 1415, speaks of only three types of proceedings: due process hearings, state administrative review where available, and civil actions for review brought "in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. Sec. 1415(e)(2). The only other reference in the section to court proceedings (other than the stay-put provision itself) is the last sentence of Sec. 1415(e)(2), authorizing "the court" to hear additional evidence; this obviously contemplates only the trial court. Thus, although an appeal is part of a "civil action," Congress's focus appears to have been on the trial stage of proceedings.
 
 
 28
 Plaintiffs quote a remark of Senator Williams, a sponsor of the EAHCA, that an injunction would be available "during the pendency of any administrative or judicial proceedings regarding a complaint," 121 Cong.Rec. 37,416 (Nov. 19, 1975). This does nothing to establish that the judicial proceedings contemplated extend beyond the trial court stage.
 
 
 29
 Assuming plaintiffs' contention could be shoehorned into the literal language of Sec. 1415(e)(3), it would run counter to the section's purpose. In Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the Supreme Court considered a contention that school districts should be entitled to change a child's placement, despite Sec. 1415(e)(3), when the child's presence posed a danger to others; the Court made clear that the section was intended to protect children from unilateral displacement by school authorities:
 
 
 30
 As the EHA's legislative history makes clear, one of the evils Congress sought to remedy was the unilateral exclusion of disabled children by schools, not courts, and one of the purposes of Sec. 1415(e)(3), therefore, was "to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings." Burlington School Committee v. Massachusetts Dept. of Education, 471 U.S. at 373, 105 S.Ct. at 2004 (emphasis added). The stay-put provision in no way purports to limit or preempt the authority conferred on courts by Sec. 1415(e)(2) ...; indeed, it says nothing whatever about judicial power.
 
 
 31
 Id. 108 S.Ct. at 606 (citation omitted, emphasis in original); see also id. at 604 ("We think it clear, however, that Congress very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students ... from school.") (emphasis in original). Once a district court has rendered its decision approving a change in placement, that change is no longer the consequence of a unilateral decision by school authorities; the issuance of an automatic injunction perpetuating the prior placement would not serve the section's purpose.
 
 
 32
 Moreover, in answering the school district's exigency claims in Honig, the Court relied heavily on the ability of courts to authorize emergency shifts in placement. See id. at 605-06. Obviously that would be a delusive remedy if the judicial authority to permit a placement change could take effect only after the conclusion of all appeals, including applications for certiorari.
 
 
 33
 Once a district court has resolved the issue of appropriate placement, the child is entitled to an injunction only outside the stay-put provision, i.e., by establishing the usual grounds for such relief. Plaintiffs here have attempted no such showing.
 
 Remaining Issues in Bowers
 
 34
 The Bowers plaintiffs put forth two procedural arguments that they claim are not foreclosed by the Leonard decision. First, they contend that DCPS was unable to produce at trial any IEP for academic year 1986-87. As the regulations require that a proposed placement be based on the child's IEP, 34 C.F.R. Sec. 300.552(a)(2), they argue that in its absence no placement can be appropriate. Although the relevant IEP was not admitted into evidence at trial--because DCPS neglected to list it on its trial exhibit list and the court sustained plaintiffs' objection--the district court found that such an IEP did exist, and this finding is supported by the record. See, e.g., Hearing Officer's Determination, Nov. 28, 1986, Bowers Appendix 59-60 (referring to IEP and ordering specific revisions). Plaintiffs have never contested the contents of the IEP, so in light of uncontradicted evidence that the document did exist before placement was proposed, plaintiffs' argument is meritless.
 
 
 35
 Second, plaintiffs argue that the district court should have reversed the hearing officer's determination that Buchanan was appropriate because the officer neglected to make the requisite findings of fact. See 34 C.F.R. Sec. 300.508(a)(5) (a party to a hearing has a right to written findings of fact). The officer's determination, however, has almost two pages of factual findings, some under the heading of "Preliminary Matters." None of the findings is very specific as to the services offered by Buchanan, but the regulations do not indicate how extensive they must be. Doubtless the district court would have been better served by more detail as to the factual basis of the hearing officer's legal conclusions. Nonetheless, it had access to the administrative record as well as additional evidence presented at trial, so we cannot say, and the plaintiffs do not argue, that the terseness of the findings harmed James in any way.
 
 
 36
 * * *We note in closing that several plaintiffs asked the district court to consider arguments not raised at the administrative hearings. In Andersen and McMullen, the plaintiffs called no witnesses to testify before the hearing officers, but at the district court both offered expert testimony comparing the children's private school experience with the public placement proposed by DCPS. The McAdoo plaintiffs may have raised an issue at trial, the inability of David to change schools in the middle of the academic year, that was not presented at the administrative level. See McAdoo Brief for the District of Columbia 39; McAdoo Reply Brief 4-5.
 
 
 37
 While the district court expressed concern about some plaintiffs' strategic decisions not to present evidence at the administrative hearing, Andersen, Mar. 30, 1988 Opinion at 9, it regarded the testimony as permissible in light of 20 U.S.C. Sec. 1415(e)(2)'s provision allowing the reviewing court to hear "additional evidence at the request of a party, and [to base] its decision on the preponderance of the evidence." Although the statutory language seems rather open-ended, Leonard made clear that concepts of exhaustion are applicable to review of due process hearings and that in the absence of some special explanation district courts should not overturn a decision on the basis of issues not initially presented to the hearing officer. 869 F.2d at 1563 & n. 4. The court explained that "it would be both unfair and unwieldly to overturn the hearing officer's decision on grounds that she had no opportunity to consider or evaluate." Id. at 1563 (footnote omitted). The Act's plan of judicial review is not designed to give a party the choice of bypassing the administrative process. And in Kerkam v. McKenzie we noted, as one of the reasons for deference to the administrative decision, "the costs imposed on all parties of having still another person redecide the matter from scratch." 862 F.2d at 887. The authority of the district court to receive new evidence does not transform the review proceedings into a trial de novo.
 
 
 38
 At oral argument plaintiffs' counsel conceded that Leonard did not permit reliance on entirely new matter at trial, at least in the absence of some special justification. The matter is moot, as, even with the new evidence, we find no basis to overturn the district court's decisions on the appropriateness of the public school placements. We trust that counsel will not again be tempted to treat the administrative proceedings as just an optional stop on the way to court.
 
 
 39
 For the reasons stated, the decisions of the district court are
 
 
 40
 Affirmed.
 
 
 
 [1]
 The plaintiffs also complained that DCPS had failed to develop IEPs for the children, as required by 34 C.F.R. Sec. 300.342(a). Yet when the child is enrolled in a private facility the regulations implementing the EAHCA require only that the school district participate in the private school's development of new IEPs. Id. at Sec. 300.347(b)
 
 
 [2]
 Although the McAdoo plaintiffs requested a stay-put injunction from the district court, they do not continue to press the issue before this court