Ann Marie ANGEVINE, et al., Plaintiffs,

v.

Andrew JENKINS, et al., Defendants.

Civ. A. No. 85-3447 JGP.

United States District Court, District of Columbia.

Dec. 10, 1990.

---

Michael Eig, Matthew B. Bogin, Washington, D.C., for plaintiffs.

Jeffrey M. Ford and Cecelia Wirtz, Asst. Corp. Counsel, Washington, D.C., for defendants.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case was filed pursuant to the Education for All Handicapped Children Act (HCA), as amended, 20 U.S.C. § 1400, *et seq.* The case is now before the Court on the defendants' Motion To Alter Or Amend Judgment.

The defendants had recommended placement of the child, Ann Marie, at the Sharpe Health School (Sharpe), a District of Columbia Public Schools (DCPS) facility. The parents disagreed with that recommendation and requested an administrative hearing. Two such hearings were held. After the first hearing the hearing officer remanded the matter to DCPS for a revision of the Individualized Educational Program (IEP). Determination filed December 5, 1984 (1984 Determination). In January 1985, the parents placed Ann Marie at Kennedy Institute (Kennedy), a private special education school in the District of Columbia and requested DCPS to fund that placement. DCPS revised the IEP, purporting to incorporate the changes directed by the hearing officer. The plaintiffs disagreed with the recommendations and requested a second due process hearing. After the hearing, the hearing officer concluded that Sharpe constituted an appropriate placement and that Kennedy was not an appropriate placement. Determination filed July 2, 1985. (1985 Determination). The plaintiffs filed this case and, after a trial, this Court filed a Memorandum in which it

found that Sharpe was not an appropriate placement and that Kennedy was appropriate. Memorandum filed March 4, 1988. Defendants then filed the instant motion and thereafter amended and supplemented their motion based upon several recent decisions by the Court of Appeals, primarily, *Leonard by Leonard v. McKenzie*, 276 U.S.App.D.C. 239, 869 F.2d 1558 (1989) and *Kerkam v. McKenzie*, 274 U.S.App.D.C. 139, 862 F.2d 884 (1988).

The defendants argue that the Court did not give due deference to the hearing officer's determination, that the plaintiffs did not meet their burden of demonstrating that the hearing officer's determination was wrong and that the Court gave consideration to the fact that the child had progressed at Kennedy and that such consideration was inappropriate and suggestive of potential-maximizing and therefore inconsistent with the "some educational benefit" standard of *Hendrick Hudson District Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The Court will briefly address those arguments.

As plaintiffs point out, in the Memorandum filed in March 1988, the Court did not overlook the teaching of *Rowley* in reaching its decision. This Court noted that the EHA does not require the state to maximize a child's potential and that courts should not impose their view of preferable educational methods upon the states. Memorandum at 7–8, 10. The question is whether the Court followed the guideline set forth in *Rowley*. This turns, in part, on what is meant by an "appropriate" education.

The Supreme Court observed that:

According to the definitions contained in the Act, a "free appropriate public education" consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child "to *benefit*" from the instruction.

*Rowley*, 458 U.S. at 188–89, 102 S.Ct. at 3042 (emphasis this Court's). The Supreme Court noted, however, that: "Noticeably

absent from the language of the statute is any substantive standard prescribing the level of education to be accorded handicapped children." At 189, 102 S.Ct. at 3042. The Supreme Court did state, however, that "the intent of the Act was more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." At 192, 102 S.Ct. at 3043. The Supreme Court appeared to reject the argument that the purpose of the HCA was to provide an equal educational opportunity, and observed: "The requirement that States provide 'equal' educational opportunities would thus seem to present an entirely unworkable standard requiring impossible measurements and comparisons." At 198, 102 S.Ct. at 3047.

The above language does not define what is meant by an appropriate or an adequate education for a handicapped child. The Supreme Court, in further addressing this issue, went on to state:

Implicit in the congressional purpose of providing access to a "free appropriate public education" is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child. It would do little good for Congress to spend millions of dollars in providing access to a public education only to have the handicapped child receive no benefit from that education.

At 200–201, 102 S.Ct. at 3048. Thereafter the Supreme Court stated that: "We therefore conclude that the 'basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." At 201, 102 S.Ct. at 3048 (footnote omitted).

The Supreme Court then recognized that "[t]he determination of when handicapped children are receiving sufficient educational benefits to satisfy the requirements of the Act presents a more difficult problem," at 201–202, 102 S.Ct. at 3048, and stated that it would not attempt to establish any one test for determining whether the bene-

fits conferred upon a child are adequate and that it was limiting its analysis to the facts in *Rowley*, at 202, 102 S.Ct. at 3049.

Thus, it seems clear that there is no general rule upon which to test the adequacy of any placement. The key appears to be that the child receive "some educational benefit," but that does not mean that the child is not to advance. Advancement is not necessarily "potential maximizing." In *Rowley*, it meant that if the child is being educated in a regular classroom, the special education "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." At 203–204, 102 S.Ct. at 3049 (footnote omitted).

Therefore, while recognizing the unique needs of each child, the school system is to have in mind, not only the placement of the child, but the advancement of the child where possible. And, the desire by the parents to have the child advance, to the extent possible, is not necessarily synonymous with "maximizing." The purpose of the HCA is "that handicapped children be enabled to achieve a reasonable degree of self-sufficiency." At 201, n. 23, 102 S.Ct. at 3048, n. 23.

This Court attempted to apply the above guidelines in this case. The Court heard the testimony of witnesses called by the parties, reviewed the decisions of the hearing officer, and reviewed the administrative record. As the Court noted, it was most impressed with the "testimony" of Beverly Mattson. Ms. Mattson was familiar with Ann Marie and familiar with the programs at Kennedy and Sharpe. She noted that Kennedy has proven to be an effective program for Ann Marie because "[i]t has higher yet realistic expectations for Ann as reflected in the IEP goals and objectives, classroom placement and classroom emphasis," that it has "identified and is using appropriate curriculum programs to teach Ann functional academics," that it "has identified and is using appropriate instructional and behavioral strategies to maximize Ann's engaged learning," and that it has been able to address Ann's learning style and to effect "significant academic achievement for Ann, particularly in read-

ing." She stated that Sharpe could not provide the learning conditions that Ann requires and that the "repetition of mismatched instruction contributed to Ann learning less and more slowly at Sharpe." She testified that in the four years that Ann Marie attended Sharpe, "she learned very little" and that she "has demonstrated improved attention and work behaviors, is progressing in functional math, and is interacting socially with staff and peers in ways she never demonstrated at Sharpe."

Defendants argue that this Court's reference to Ann Marie's progress at Kennedy is inconsistent with the "some educational benefit" standard of *Rowley* and "is strongly suggestive of the potential-maximizing standard that Rowley [ ] forbids." Defendants' Supplemental Memorandum at 2–3. This Court disagrees. In *Rowley*, the Supreme Court found that, although a child is advancing from grade to grade, that does not mean that the child is receiving an appropriate education, but that academic progress by Amy Rowley, when considered with the special services rendered by the school system was dispositive as to whether Amy was receiving a "free appropriate public education." At 202, n. 25, 102 S.Ct. at 3049, n. 25. "The grading and advancement system thus constitutes an important factor in determining *educational benefit*." At 203, 102 S.Ct. at 3049 (emphasis this Court's). As the Supreme Court noted:

> When the handicapped child is being educated in the regular classrooms of a public school system, the achievement of passing marks and advancement from grade to grade will be one important factor in determining educational benefit.

At 207, n. 28, 102 S.Ct. at 3051, n. 28. Thus, the determination of progress *is* a factor to be considered in assessing any special education program and the fact that Ann Marie is making progress strongly suggests that the program is affording her a "educational benefit." "Progress" is not a code word for "maximizing," rather, it is a one measurement based upon which the program may be assessed.

The HCA is designed to provide educational benefits to a variety of handicapped children, ranging from those with

28

slight handicaps to those who are profoundly retarded. It is for this reason that the Act recognizes that each child is different and that each has unique needs which must be addressed during the preparation of the IEP. In attempting to gauge the appropriateness of programs for children at different points of the spectrum, the school system, and where necessary, the hearing officers or the courts, may also review the effectiveness of the programs.

 In a case like *Rowley*, the task is not so difficult because Amy Rowley was deaf but was still performing better than the average child in her class and was advancing easily from grade to grade. At 185, 102 S.Ct. at 3040. The issue presented was whether she required an interpreter and the trial court had concluded that because there was a disparity between her achievement and *potential*, she was not receiving a "free appropriate public education." Amy Rowley's progress was easy to determine since the school system had only to look to her grades. The fact that the parents, with the agreement of the trial court, sought to maximize her potential was also easy to discern since the parents knew that with an interpreter, it was likely that she could do far better in school—but the purpose of the Act is only to give her access to the school and "some educational benefit," not to provide her with the very best education.[1]

Unfortunately, Ann Marie's lot is much different from that of Amy, and the measurement of progress cannot be based on grades; but, it is no less a measure of the appropriateness of the program. The record reflects that Ann Marie made little or no progress at Sharpe and this was an indication that the Sharpe program was not appropriate. The fact that she made good progress at Kennedy was an indication that the Kennedy program was appropriate and effective. The measurement has nothing to do with maximizing her potential; rather, it has to do with whether Ann Marie is receiving "some educational benefit" which hopefully affords her "some degree of self-sufficiency."

The Court concludes that it has properly applied the *Rowley* standard. Moreover, the Court is satisfied that it gave proper deference to the determinations made by the hearing officer. Indeed, the Court found that "the Hearing Officer has made every effort to arrive at a fair and reasonable determination." Memorandum at 9.

Finally, the defendants note that the Court has not addressed those portions of the program that Kennedy cannot provide. *See* 1985 Determination at 5, par. 6. But, as the hearing officer noted, the issue before her was the appropriateness of the program, not whether Sharpe or Kennedy were able to follow the requirements of the program.

After giving careful consideration to the record in this case, the Court concludes that the motion to alter or amend judgment should be denied.

An appropriate order has been entered.

<hr>

---

1. Indeed, it is likely that many of the other children, handicapped and non-handicapped, would have benefitted from an enhanced program—thus to afford Amy such special services would have been more than is required by the EHA and unfair to the other children.