Ann Marie ANGEVINE, et al.

v.

Franklin L. SMITH, et al., Appellants.

No. 91–7015.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 8, 1991.

Decided March 24, 1992.

---

Susan S. McDonald, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellants.

Michael J. Eig, with whom Matthew B. Bogin, Washington, D.C., was on the brief, for appellees.

Before EDWARDS, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The District of Columbia appeals a district court judgment ordering it to reimburse James and Cecilia Angevine for the costs of the private education of their retarded daughter, Ann Marie. Because the court did not adequately explain its basis for upsetting the District of Columbia hearing officer's determinations that Ann Marie could receive an appropriate education at a public school, we reverse and remand the case for further consideration.

## I. BACKGROUND

### A. Statutory

The Education of the Handicapped Act ("EHA"), 20 U.S.C.A. §§ 1400–85 (West Supp.1991), was enacted "to assure that all children with disabilities have available to them ... a free appropriate public education." *Id.* § 1400(c). To qualify for federal financial assistance under the EHA, a State (or the District of Columbia) must demonstrate that it "has in effect a policy that assures all children with disabilities the right to a free appropriate public education." *Id.* § 1412(1). The District may provide this education either through public or private institutions. *See id.* § 1413(a)(4)(B). The District need not pay for a handicapped child's private education if it offers that child appropriate education in a public facility. *See* 34 C.F.R. § 300.-403(a) (1991).

### B. Factual

Ann Marie Angevine was born in 1974 and suffers from multiple disabilities, including cerebral palsy, moderate to severe mental retardation, speech/language disorder, and perceptual/motor dysfunction. In 1980, Ann Marie began attending the Sharpe Health School, a District of Columbia Public School for severely disabled students. As required by the EHA, Sharpe formulated an Individualized Educational

Program ("IEP") for Ann Marie. *See* 20 U.S.C. § 1401(a)(19).

During the 1984–85 school year, Ann Marie's parents withdrew her from Sharpe against the recommendation of the District of Columbia Public Schools ("DCPS"). The Angevines requested a due process hearing to challenge the placement at Sharpe. *See* 20 U.S.C. § 1415(b). The hearing took place in November 1984, following which the hearing officer made specific findings regarding Ann Marie's educational needs. She then concluded that although Ann Marie's present IEP was inadequate, the school had the capacity to provide the special programs required by Ann Marie. Accordingly, the hearing officer ordered the DCPS to hold a new IEP meeting at the parents' earliest convenience.

This meeting, held in December 1984, resulted in a revised IEP to be implemented at Sharpe. In January 1985, however, the Angevines notified the DCPS that they had concluded that Sharpe could not provide Ann Marie with an appropriate education and that they had decided to place her at a private educational facility in Washington, the Kennedy Institute. The Angevines asked the DCPS to pay the tuition at Kennedy; the DCPS refused, and the Angevines requested a second hearing to determine the DCPS's responsibility for Ann Marie's placement at Kennedy.

This second hearing was held in June 1985. The hearing officer determined that the DCPS had revised Ann Marie's IEP to include the programs specified in her earlier order. The hearing officer concluded that Sharpe offered an appropriate program for Ann Marie for the 1985–86 school year, but that Kennedy was inappropriate because it could not provide her with certain programs that the hearing officer had earlier found to be necessary.

The Angevines then brought this action under the EHA's provision for district court review. *See* 20 U.S.C. § 1415(e). In March 1988, the district court held:

> While the question is a close one, the Court concludes that Kennedy represents an appropriate program, that Sharpe does not represent an appropriate program, and that the [Angevines] are entitled to prevail.

*Angevine v. McKenzie*, No. 85–3447, mem. op. at 11, 1988 WL 23250 (D.D.C. Mar. 4, 1988) ("*Angevine I*"). The court therefore ordered the DCPS to reimburse the Angevines for the costs of Ann Marie's private education at Kennedy for the years 1985–86, 1986–87, and 1987–88. *Id.* at 12–13.

On July 15, 1989, the DCPS mailed the Angevines a "Notice of Continuing Special Education Services" indicating that the DCPS would "continue" to place and fund Ann Marie at the Kennedy Institute. Exhibit 1 to Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, filed Nov. 29, 1989. The DCPS later attested that this notice resulted from an "administrative error," noting that DCPS had never funded Ann Marie at the Kennedy Institute and therefore could not "continue" her funding there. Affidavit of Richard K. Henning, ¶¶ 4–5, Exhibit A to Opposition to Plaintiffs' Motion for Preliminary Injunction, filed Dec. 14, 1989. DCPS notified the Kennedy Institute of this administrative error on November 28, 1989. *See* Exhibit 85–3447 to Opposition to Plaintiffs' Motion for Preliminary Injunction, filed Dec. 14, 1989.

The Angevines subsequently moved for a temporary restraining order and then a preliminary injunction to require the District to fund Ann Marie's placement at Kennedy. Both of these motions were based, in part, on the District's erroneous notice that Ann Marie's funding at Kennedy would be continued for the 1989–90 school year. *See* Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, filed Nov. 29, 1989, at 2, ¶ 3; Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, filed Dec. 7, 1989, at 2, ¶ 3. The district court issued a temporary restraining order on December 4, 1989, and then a preliminary injunction on December 22, 1989, requiring the DCPS to fund Ann Marie's tuition at Kennedy for the 1989–90 school year.

The District filed a motion to alter and amend the district court's March 4, 1988 judgment. The District later supplemented

this motion with the request that the judgment be reconsidered in light of several recent court of appeals decisions, primarily *Leonard by Leonard v. McKenzie*, 869 F.2d 1558 (D.C.Cir.1989), and *Kerkam v. McKenzie*, 862 F.2d 884 (D.C.Cir.1988). The district court denied this motion on December 4, 1990. *See Angevine v. Jenkins*, 752 F.Supp. 24, 28 (D.D.C.1990) ("*Angevine II*"). The District now appeals this denial and the underlying judgment and other orders merged therein, including orders entered on March 1, 1988, December 4, 1989, and December 22, 1989.

## II. ANALYSIS

■ There has never been any question about Ann Marie's eligibility to receive special education assistance under the EHA. Moreover, the appropriateness of the IEP designed pursuant to the hearing officer's first order and accepted in her second order is not at issue, the Angevines having stipulated at oral argument before the district court that they would not challenge the revised IEP. The critical question, then, is whether Sharpe had the capacity to implement this revised IEP during the 1985–86 school year. If it did, a "presumption of continuity" would arise, and Sharpe would remain as Ann Marie's appropriate placement for subsequent years unless the Angevines could persuade the court of new circumstances that would invalidate the IEP. *See Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1022 (D.C.Cir.1989). We conclude that the district court failed to address the central question of Sharpe's capacity in 1985–86 and, as a consequence, did not adequately explain its basis for upsetting the hearing officer's determinations that Sharpe was appropriate.

In *Kerkam*, we reversed a decision granting reimbursement to the parents of Alexander Kerkam, a severely retarded youth. The Kerkams had placed Alexander in a private school after rejecting a DCPS offer of education at a public special education facility. The hearing officer had found the public school program appropriate, but the district court rejected that finding and ordered the DCPS to reimburse the Kerkams for the costs of Alexander's private education. We found that the district court had shown an "unexplained preference for the conclusions of those who opposed the hearing officer's view" and therefore had not given adequate deference to the hearing officer's decision. *Kerkam*, 862 F.2d at 889. We explained:

> We will not try here to capture the appropriate deference in some formula.... But we think it clear that a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so.

*Id.* at 887.

In this case, there is no indication that the district court placed the burden on the Angevines to persuade the court that the hearing officer had erred in finding the Sharpe program adequate for the 1985–86 school year. More important to our decision, however, was the court's failure to explain adequately its basis for overturning the hearing officer's determination. The court demonstrated its awareness of the proper inquiry, stating that "the EHA does not require the state to maximize a child's potential and [ ] courts should not impose their view of preferable educational methods upon the states." *Angevine II*, 752 F.Supp. at 26. The problem is that the court does not provide further explanation of its decision to overturn the hearing officer. When the court evaluated the adequacy of the education provided Ann Marie by Sharpe, it did so only in terms of the child's experience at that school in the years before 1985–86. The court stated:

> [I]t appears that at Sharpe, Ann Marie was allowed to, in effect, exist and to put in time without making any significant progress.... The Court concludes that the program at Sharpe simply was not an appropriate program for Ann Marie.

*Angevine I,* mem. op. at 10 (Mar. 4, 1988). This retrospective approach does not address the critical issue of whether Sharpe

would have been able to implement Ann Marie's new IEP in 1985–86.

Instead of addressing Sharpe's capabilities, the court engaged in an irrelevant comparison of her experiences at Sharpe and at the Kennedy Institute. The court was "most impressed" with the testimony of Beverly Mattson, the Angevines' expert witness. *See Angevine II,* 752 F.Supp. at 27. The court stated that Ms. Mattson

> testified that in the four years that Ann Marie attended Sharpe, "she learned very little" and that [at Kennedy] she "has demonstrated improved attention and work behaviors, is progressing in functional math, and is interacting socially with staff and peers in ways she never demonstrated at Sharpe."

*Id.* at 27. Ms. Mattson's testimony assesses Sharpe only in comparison to Kennedy. The EHA, however, requires the District to provide Ann Marie with an appropriate education, not the best education possible. *See Hendrick Hudson Dist. Bd. of Ed. v. Rowley,* 458 U.S. 176, 199, 102 S.Ct. 3034, 3047, 73 L.Ed.2d 690 (1982) ("[T]o require ... the furnishing of every special service necessary to maximize each handicapped child's potential is, we think, further than Congress intended to go."). As we have noted, however, "the [EHA] simply does not place the comparative question before the court." *Knight by Knight v. District of Columbia,* 877 F.2d 1025, 1030 (D.C.Cir.1989) (holding that "the district court erred in overturning on comparative grounds the hearing officer's noncomparative determination that [the public school] was an appropriate placement").

■ In granting the temporary restraining order and preliminary injunction, the district court relied on the uncontested fact that the DCPS notified the Angevines in July 1989 that it would provide funding for Ann Marie at the Kennedy Institute. *See Angevine v. Jenkins,* No. 85–3447, mem. order at 2–3 (D.D.C. Dec. 22, 1989). Although the DCPS asserts that this notice was due to administrative error, it did not advise the Kennedy Institute of the fact until late November 1989—well into the school year. As the district court found

that the Angevines had returned Ann Marie to the Kennedy Institute for the 1989–90 school year in reliance on the DCPS's notice and that they could not otherwise afford to place her there, we affirm the injunction requiring the DCPS to fund Ann Marie's education at Kennedy for that year. *See Leonard by Leonard,* 869 F.2d at 1564 (D.C.Cir.1989). We note, however, that its administrative error has been corrected, and the DCPS has assumed no obligation with respect to later years. *See id.* at 1562 and n. 3.

### III. CONCLUSION

We conclude that the district court did not adequately explain its basis for rejecting the hearing officer's determinations that Sharpe was appropriate for Ann Marie. Therefore, we reverse and remand for reconsideration consistent with this opinion.

On remand, the district court must focus on determining whether Sharpe had the capacity to implement Ann Marie's revised IEP during the 1985–86 school year. If Sharpe had this capacity, then the court must accept the hearing officer's decision to deny recovery to the Angevines for 1985–86. Moreover, if it is found that Sharpe had that capacity, a presumption will arise against reimbursement for the subsequent years (1989–90 excepted) unless the Angevines can produce evidence and persuade the court of changed circumstances that would render the 1985–86 IEP inappropriate as a guide for the following years. *See Andersen by Andersen,* 877 F.2d at 1022.

*So ordered.*