**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-1201**

———————

Z. W., a minor, by his parents and next
friends G. and J. W.; G. W.; J. W.,

                                    Plaintiffs - Appellants,

        versus

ERIC J. SMITH, officially as Superintendent;
BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY,

                                    Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.
(1:05-cv-00501-WDQ)

———————

Argued:  October 27, 2006        Decided:  December 21, 2006

———————

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion,
in which Judge Wilkinson and Judge Duncan joined.

———————

**ARGUED:** Michael Jeffrey Eig, MICHAEL J. EIG & ASSOCIATES, P.C.,
Chevy Chase, Maryland, for Appellants.  Eric Charles Brousaides,
Columbia, Maryland, for Appellees.  **ON BRIEF:** Haylie M. Iseman,
MICHAEL J. EIG & ASSOCIATES, P.C., Chevy Chase, Maryland, for
Appellants.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This case considers whether the Individuals With Disabilities Education Act ("IDEA" or "Act"), 20 U.S.C.A. §§ 1400-1487 (1997),[1] requires Appellee, the Anne Arundel County Public Schools ("AACPS"),[2] to reimburse Appellants, the parents of a learning-disabled student, for tuition the parents paid to a non-state-approved private school during the 2002-2003 school year. Because we believe that AACPS offered the student a free appropriate public education ("FAPE") at a state-approved school for the 2002-2003 school year, we affirm the district court's decision to deny the parents tuition reimbursement and award AACPS judgment as a matter of law.

I.

Seventeen-year-old Z.W. has learning disabilities and Attention Deficit Hyperactivity Disorder. Accordingly, he is a "child with a disability" to whom the IDEA guarantees a free appropriate public education. 20 U.S.C.A. §§ 1400(d), 1401(3)(A). Z.W. attended Maryland's Anne Arundel County public schools through

---

[1]Because the administrative and district court decisions in this case were decided under the 1997 Act, before Congress's reauthorization of the IDEA in 2004, our opinion cites to the 1997 Act.

[2]More specifically, Appellees are (1) Eric Smith, Superintendent of AACPS, and (2) the Board of Education of Anne Arundel County, which operates AACPS.

the end of the 1999-2000 school year but encountered academic and emotional problems there. These problems led his parents to enroll him, at their own expense, in a non-public day school, The Lab School of Washington, Baltimore Campus ("Baltimore Lab"), for the 2000-2001 school year. Subsequently, his parents and AACPS entered into a settlement agreement by which AACPS agreed to provide public funding for Z.W. to attend Baltimore Lab the next year—the 2001-2002 school year—as well.

On May 6, 2002, a team including Z.W.'s parents met to develop an individualized education program ("IEP") for him. The team discussed Z.W.'s progress at Baltimore Lab and determined his placement for the 2002-2003 school year. At the meeting, AACPS confirmed that it did not have an appropriate public school placement for Z.W. and agreed to fund his education at a non-public day school. The parents requested that AACPS maintain Z.W.'s current placement at Baltimore Lab, but AACPS informed them that Baltimore Lab had not yet received approval from the Maryland State Department of Education ("MSDE") as a fundable non-public special education school. AACPS instead referred Z.W. for admission to High Road Academy ("High Road"), a non-public special education school in Maryland that was approved by the MSDE. High Road accepted Z.W. on June 10, 2002.

The parents visited High Road that summer but feared that a change in placement would impair Z.W.'s social, emotional, and

academic progress. They therefore, at their own expense, continued his placement at Baltimore Lab for the 2002-2003 school year.

During the summer of 2003, MSDE approved Baltimore Lab as a fundable non-public special education school. AACPS then agreed to place Z.W. at the Baltimore Lab for the 2003-2004 school year. Z.W. now attends Baltimore Lab with public funding from AACPS.

On April 16, 2004, the parents requested a due process hearing on the grounds that AACPS failed to provide Z.W. with a FAPE for the 2002-2003 school year, when AACPS attempted to send Z.W. to High Road. The parents sought reimbursement for their placement of Z.W. at Baltimore Lab that year. After a hearing on June 24, 2004, the Administrative Law Judge ("ALJ") issued a decision concluding that AACPS was not obligated to reimburse the parents because: (1) AACPS had offered Z.W. a FAPE at High Road for the 2002-2003 school year, and (2) the parents had not given proper notice to AACPS of their intent to enroll Z.W. at Baltimore Lab rather than High Road for the 2002-2003 school year.

The parents appealed, and the parties filed cross motions for summary judgment in the United States District Court for the District of Maryland. On January 5, 2006, the district court ruled in AACPS's favor, upholding the ALJ's decision that the parents were not entitled to reimbursement because they did not comply with the IDEA's notice requirements. The district court did not reach

-4-

the question of whether AACPS had offered a FAPE to Z.W. for the 2002-2003 school year.

## II.

Ordinarily, this Court reviews a district court's grant of summary judgment de novo. In IDEA cases, however, this Court conducts "a modified de novo review, giving 'due weight' to the underlying administrative proceedings." MM ex rel. DM v. Sch. Dist. of Greenville County, 303 F.3d 523, 530-31 (4th Cir. 2002) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)). Administrative findings of fact in IDEA cases "are entitled to prima facie correctness;" when the district court does not follow those findings, it must explain why not. Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991). "After giving the administrative fact-findings such due weight, if any, the district court then is free to decide the case on the preponderance of the evidence, as required by the statute." Id.; see also 20 U.S.C.A. § 1415(i)(2)(B).[3]

---

[3]20 U.S.C.A. § 1415(i)(2)(B) provides in full: "In any action brought under this paragraph, the court—(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

III.

Congress enacted the IDEA largely "to ensure that all children with disabilities have available to them a free appropriate public education" to meet their unique needs. 20 U.S.C.A. § 1400(d)(1)(A). See generally id. § 1400(d) (describing purposes of the IDEA). The statute defines the term "free appropriate public education" as special education and related services that (1) have been provided at the public expense, under public supervision and direction, and without charge; (2) meet the standards of the state educational agency; (3) include an appropriate preschool, elementary, or secondary school education in the state; and (4) conform with the IEP required by the statute. Id. § 1401(8).

States qualify for federal funds under the IDEA by adopting policies and procedures consistent with the statute. Id. § 1412(a). A major condition for federal funding is that state and local education agencies develop an IEP for each eligible child before the beginning of each school year. Id. § 1412(a)(4). The statute also requires that state or local educational agencies pay for a child's private school tuition when the agencies place the child in, or refer the child to, a private school to comply with the IDEA. See id. § 1412(a)(10)(B)(i). When parents unilaterally place a child into private school, a court or hearing officer may require the agency to reimburse the parents if "the agency had not made a [FAPE] available to the child in a timely manner" before the

-6-

parents enrolled the child in private school. Id. § 1412(a)(10)(C)(ii). The IDEA limits, however, parents' right to reimbursement:

> The cost of reimbursement . . . may be reduced or denied—
>
> (I) if—
>
>> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>>
>> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa) . . . .

Id. § 1412(a)(10)(C)(iii).


IV.

Although the district court ruled on the issue of whether Z.W.'s parents had complied with the IDEA's notice requirements, it did not address the ALJ's finding that AACPS was not obligated to reimburse the parents because High Road would have provided Z.W. with a FAPE. It is on this latter ground, however, that we affirm the district court's decision to grant AACPS judgment as a matter of law. See Scott v. United States, 328 F.3d 132, 137 (4th Cir. 2003) ("We are, of course, entitled to affirm on any ground

appearing in the record, including theories not relied upon or rejected by the district court.").

The IDEA's requirements regarding a FAPE are "modest." <u>A.B. ex rel. D.B. v. Lawson</u>, 354 F.3d 315, 325 (4th Cir. 2004). A school system satisfies its statutory obligation when it provides sufficient personalized instruction and support services to "permit the child to benefit educationally." <u>Rowley</u>, 458 U.S. at 203. Otherwise stated, "a FAPE must be reasonably calculated to confer <u>some</u> educational benefit on a disabled child." <u>MM</u>, 303 F.3d at 526 (emphasis added); <u>see also</u> <u>Barnett v. Fairfax County Sch. Bd.</u>, 927 F.2d 146, 153 (4th Cir. 1991) ("In essence, an appropriate education is one which allows the child to make educational progress."). The IDEA's requirements are this modest, according to the Supreme Court, because Congress intended the IDEA to increase access to public education more so than to "guarantee any particular level of education once inside." <u>Rowley</u>, 458 U.S. at 192. Thus, the Supreme Court has explained, "[w]hatever Congress meant by an 'appropriate' education, it is clear that it did not mean a potential-maximizing education." <u>Id.</u> at 197 n.21.

In reviewing administrative proceedings to decide whether a school system has provided a FAPE, courts "by no means [have] an invitation . . . to substitute their own notions of sound educational policy for those of the school authorities they review." <u>Rowley</u>, 458 U.S. at 206. This Court "must defer to

educators' decisions as long as an IEP provided the child the basic floor of opportunity that access to special education and related services provides." <u>Tice v. Botetourt County Sch. Bd.</u>, 908 F.2d 1200, 1207 (4th Cir. 1990) (internal quotation marks omitted).

At the administrative hearing, Z.W.'s stepmother and two IEP team members confirmed that the parents and AACPS agreed on the substance of the IEP. They merely disagreed on whether Baltimore Lab or High Road was the appropriate school at which to implement the IEP. Three experts in special education testified on behalf of AACPS that placement at High Road would have provided Z.W. with an educational benefit. These experts were the executive director of High Road, who had reviewed Z.W.'s record before hosting his parents' visit to High Road during the summer of 2002; the chairperson of the IEP, who had placed students successfully at High Road in the past; and Z.W.'s case manager, who had observed Z.W. at Baltimore Lab and had observed the program at High Road.

Two witnesses testified on behalf of the parents that Baltimore Lab would have been the appropriate placement. They were Z.W.'s stepmother and the principal of Baltimore Lab. The principal conceded that she did not know the program at High Road well enough to comment upon its appropriateness for Z.W. Moreover, the principal explained that she did not participate in the IEP team meeting because she had just assumed her position. The principal merely testified that she felt Baltimore Lab was an

appropriate placement for Z.W. because he was making progress there. Neither the principal nor Z.W.'s stepmother testified that High Road would be unable to provide Z.W. with an educational benefit. Z.W.'s stepmother testified that High Road could provide Z.W. with some level of educational benefit and that the school was not inappropriate per se. She and her husband simply thought High Road "didn't seem to be the type of total educationally [sic] program that we think is best for [Z.W.]" because the school lacked a strong focus on the arts and appeared to afford students less social interaction. J.A. 51. Z.W.'s stepmother also testified that she and her husband opposed placement at High Road because Z.W. would resist the transition.

After reviewing this and other testimony about Z.W., High Road, and Baltimore Lab, the ALJ concluded that, despite the schools' slight differences (namely, High Road is state-approved and aspires to mainstream students whereas Baltimore Lab was not approved at the time and had an arts program), both would offer Z.W. a FAPE. The ALJ further concluded that "[t]he weight of the expert testimony is against the Parents' position concerning the adversity of a move upon the Student." J.A. 697. Only the Baltimore Lab principal corroborated the parents' view that a move to High Road would be detrimental to Z.W., the ALJ noted, and no testimony showed that such detriment, if any, would otherwise deny a FAPE at High Road. Thus, the ALJ concluded, "[e]ven if Lab were

an MSDE approved school at the time of the unilateral placement, I would be compelled to give weight to the IEP Team's recommendation of High Roads [sic]." J.A. 698.

The ALJ's factual findings, which this Court must presume correct, are, upon review, fully supported by the record. See Rowley, 458 U.S. at 203. The ALJ properly deferred to the views of educational authorities and searched only for evidence that High Road could meet the modest IDEA requirement that a state agency's placement provide some educational benefit. See A.B., 354 F.3d at 325; MM, 303 F.3d at 526; Tice, 908 F.2d at 1207.

The ALJ did not, as the parents argue, disregard the testimony of Z.W.'s stepmother and the Baltimore Lab principal. By contrast, the ALJ considered their testimony and found that the testimony of AACPS's expert witnesses outweighed it. Here, as in A.B., 354 F.3d at 328, "[t]he ALJ correctly recognized that while AACPS and [the parents'] experts disagreed, IDEA requires great deference to the views of the school system rather than those of even the most well-meaning parent." Deference in this situation was warranted especially because the testimony by AACPS's experts shows that AACPS applied its expertise to Z.W.'s unique situation. Cf. McKenzie v. Smith, 771 F.2d 1527, 1535 (D.C. Cir. 1985) ("Where there is no indication that the school officials' expertise has been brought to bear on the individual needs of the handicapped child . . . the deference granted will be commensurately lower.").

Perhaps more importantly, allegations like that of Z.W.'s stepmother that one school "is better than" another "do not state a meritorious cause of action" under the IDEA. Hessler v. State Bd. of Educ. of Md., 700 F.2d 134, 139 (4th Cir. 1983); see id. ("[B]ecause a given educational placement is allegedly more appropriate than another, it does not follow that the less appropriate program is 'not appropriate' within the meaning of the Act."). Thus we find that the ALJ's factual findings and ultimate determination that High Road offered Z.W. a FAPE were correct.

The parents' arguments to the contrary fail. The parents argue, for example, that the record is devoid of evidence that High Road is a better placement for Z.W. or that Baltimore Lab was not meeting his needs. This argument, however, misunderstands the standard. Rather, "[t]he FAPE must only be calculated to confer some educational benefit on a disabled child." A.B., 354 F.3d at 319 (internal quotation marks and emphasis omitted). The ALJ found that placement at High Road met this burden.

The parents further argue that the ALJ should have decided that keeping Z.W. at Baltimore Lab was the proper course of action because courts have held that the IDEA favors maintaining the status quo when a child is already receiving an appropriate education. The cases cited by the parents (none of them decisions of this Court) for this proposition are inapposite. Those cases involve a court's determination that a child should not be moved

during the final year of high school, in the middle of the school year, or when the court lacks any evidence that the proposed school could actually meet the child's needs.  See Hale v. Poplar Bluffs, R-I Sch. Dist., 280 F.3d 831, 833 (8th Cir. 2002); Block v. Dist. of Columbia, 748 F. Supp. 891, 895 (D.D.C. 1990); Holmes v. Dist. of Columbia, 680 F. Supp. 40, 41-42 (D.D.C. 1988).  These circumstances do not apply to Z.W.

Lastly, the parents argue that AACPS has not cited any legal, policy, or educational rationale for moving Z.W. from Baltimore Lab to High Road for the 2002-2003 school year.  The record does not support this argument.  AACPS stated at the IEP meeting, and has maintained throughout this litigation, that it could not place Z.W. at Baltimore Lab for the 2002-2003 year because Baltimore Lab was not yet state-approved.  AACPS was able to fund Z.W.'s education at Baltimore during the 2001-2002 year only because the funding was pursuant to a settlement agreement, not an IEP team decision. Outside of settlement, AACPS maintains, it has no authority to place students in non-approved schools.  The parents refute all of these contentions.  Although the ALJ did not reach this issue, we note that the weight of the evidence, both testimonial and documentary, supports AACPS's contentions, as does the caselaw and the statute itself.  See, e.g., 20 U.S.C.A. § 1412(a)(10)(B) (providing that when public agencies place children in private schools, "the State educational agency shall determine whether such

schools and facilities meet standards that apply to State educational agencies"); <u>Carter v. Florence County Sch. Dist. Four</u>, 950 F.2d 156, 162 (4th Cir. 1991), <u>aff'd</u>, 510 U.S. 7, 14 (1993) (holding that the unilateral placement of a student <u>by the parents</u> in an unapproved school is not by itself a bar to tuition reimbursement, but <u>public schools</u> may not place students in unapproved schools).

In sum, the record fully supports the ALJ's conclusion that AACPS's proposed placement at High Road for the 2002-2003 school year offered Z.W. a FAPE and therefore precluded the parents' request for tuition reimbursement. Having decided the case on this ground, we do not reach the second question presented to this Court: whether the district court properly denied the parents' request for tuition reimbursement based on their failure to comply with the IDEA's notice requirements.

V.

Because AACPS offered to Z.W. a FAPE at High Road for the 2002-2003 school year, the district court's decision to grant AACPS judgment as a matter of law is affirmed.

<u>AFFIRMED</u>