<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-2348

           PAUL VERHOEVEN, AS PARENT AND NEXT FRIEND
              OF PAUL ("P.J.") VERHOEVEN, A MINOR,
           DONNA VERHOEVEN, AS PARENT AND NEXT FRIEND
              OF PAUL ("P.J.") VERHOEVEN, A MINOR,

                    Plaintiffs, Appellants,

                               v.

                  BRUNSWICK SCHOOL COMMITTEE,

                      Defendant, Appellee.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

            [Hon. Gene Carter, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                  Hill, Senior Circuit Judge,

                   and Boudin, Circuit Judge.

                     _____________________

    Richard L. O'Meara, with whom Michael D. Traister and Murray,
Plumb & Murray were on brief, for appellants.
    Amy K. Tchao for appellee.

                      ____________________

                      September 21, 1999
                      ____________________

         TORRUELLA, Chief Judge.  Plaintiffs-appellants Paul and
Donna Verhoeven ("the Verhoevens") appeal the district court's
denial of their motion for an automatic preliminary injunction
compelling defendant-appellee Brunswick School Committee
("Brunswick") to fund their son P.J.'s interim placement in a
private school during the pendency of the Verhoevens' challenge to
P.J.'s educational placement in the Brunswick, Maine public school
system.  Although we disagree with the district court's
determination that the Verhoevens' motion was moot, we nonetheless
affirm the denial of that motion.
                           BACKGROUND
I.  The Individuals with Disabilities Education Act
         Section 1415 of the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C.  1400 et seq., requires state and
local educational agencies that receive federal assistance for the
education of children with disabilities to establish particular
procedural safeguards with respect to the provision of a "free
appropriate public education" for those children.  See 20 U.S.C.
1415(a).  The "free appropriate public education" required by the
IDEA is tailored to the unique needs of the child through the
implementation of an "individualized education program" ("IEP").  
See 20 U.S.C.  1401(8); 20 U.S.C.  1414.  Each child's IEP must
be reviewed annually and revised when appropriate.  See 20 U.S.C.
1414(d)(4).
         If the parents of the child object to the child's
placement, they are entitled to file a complaint with the
educational agency and to have that complaint resolved at "an
impartial due process hearing."  20 U.S.C.  1415(f).  Any party
aggrieved by the findings and decision resulting from the
administrative hearing may then bring a civil action in state or
federal court.  See 20 U.S.C.  1415(i)(2).  Section 1415(j)
provides that "during the pendency of any proceedings conducted
pursuant to this section, unless the State or local educational
agency and the parents otherwise agree, the child shall remain in
the then-current educational placement of such child."  20 U.S.C.
1415(j).  Because this subsection is designed to preserve the
status quo pending resolution of challenge proceedings under the
IDEA, it is commonly referred to as the "stay put" provision.
II.  Factual and Procedural Background
         P.J. Verhoeven has been identified as a student with a
disability under federal and Maine special education laws.  Because
the Verhoevens reside in Brunswick, Maine, the Brunswick School
Committee is the local education agency responsible for providing
P.J. a free appropriate public education.  During the 1996-97 school
year, P.J. was a seventh grade student placed under an IEP at
Brunswick Junior High School.  At the end of the school year, P.J.'s
Pupil Evaluation Team ("PET") proposed an eighth grade IEP for P.J.
at Brunswick Junior High School for the 1997-98 school year.  The
Verhoevens, unhappy with P.J.'s similar seventh grade placement,
objected and requested an administrative due process hearing to
challenge the proposed IEP.
         Before the administrative hearing regarding the challenge
occurred, Brunswick and the Verhoevens resolved the dispute by
entering into a settlement agreement.  In that agreement, Brunswick
and the Verhoevens agreed to temporarily place P.J. at the Southern
Maine Learning Center through the end of the 1997-98 school year.  
The parties agreed that the PET would evaluate P.J.'s progress at
the end of the school year and make a determination at that time
regarding P.J.'s placement for the 1998-99 school year.  The parties
agreed that "[t]he purpose of this temporary placement is to use the
1997-1998 school year to effectively transition P.J. from the junior
high school to the high school setting at the Brunswick High School
for the 1998-1999 school year."  The agreement then expressed the
parties' intent:  (1) that P.J. would return to the Brunswick public
school system for the 1998-99 year, and (2) that the SMLC placement
was a temporary placement only.  The agreement also provided for
costs and attorneys' fees to the Verhoevens and dismissal of their
due process challenge to the IEP.  P.J.'s PET met on October 2, 1997
and revised his IEP to change his placement for the 1997-98 school
year to SMLC.
         As contemplated by the agreement, P.J. attended SMLC
during the 1997-98 school year, and P.J.'s PET met on June 1, 1998
to determine P.J.'s IEP for the 1998-99 school year.  At that
meeting, the PET determined that P.J.'s ninth grade placement would
be at Brunswick High School.  After investigating the placement, the
Verhoevens challenged it on July 20, 1998 by requesting an
administrative due process hearing.  The Maine Department of
Education appointed Carol Lenna as the hearing officer and scheduled
an administrative hearing for September 8, 1998.
         The parties could not agree on where P.J. should be
placed during the pendency of the Verhoevens' challenge.  The
Verhoevens contended that P.J. should "stay put" at SMLC at
Brunswick's expense, while Brunswick maintained that P.J. should
attend Brunswick High School.  The issue was then submitted to the
hearing officer for resolution.  The Verhoevens now characterize
this submission as the pursuit of a reviewable administrative ruling
on the interim placement issue, while Brunswick claims that the
parties agreed at a pre-hearing conference on August 13, 1998 to
accept as final the hearing officer's decision on the interim
placement issue.  For whatever purpose it was sought, the hearing
officer issued her "stay put" decision in a letter dated August 28,
1998, determining that P.J.'s placement pending the outcome of due
process proceedings would be Brunswick High School.
         Unhappy with this result, the Verhoevens filed a Verified
Complaint and Motion for Automatic Preliminary Injunction with the
district court.  The case was assigned to United States District
Judge Gene Carter.  In their complaint, the Verhoevens sought relief
from the hearing officer's "stay put" decision in the form of a
preliminary injunction requiring Brunswick to provide funding for
P.J.'s placement at SMLC "pending the completion of due process
proceedings" challenging the June 1998 placement decision.  Before
the district court ruled on the request for a preliminary
injunction, the hearing officer issued her administrative due
process decision.  On October 2, 1998, the hearing officer denied
the Verhoevens' challenge to the IEP and ordered P.J. to be placed
at Brunswick High School.
         On October 14, 1998, Judge Carter denied the Verhoevens'
motion for an injunction as moot.  The court found that the
Verhoevens' entitlement to a "stay put" injunction became moot "by
virtue of the hearing officer's decision dated October 2, 1998
deciding all issues submitted to the hearing officer."  The court
went on to find that the parties agreed to submit the "stay put"
issue to the hearing officer for resolution.  The court then
concluded that, because the Verhoevens agreed to submit that issue
to the hearing officer for resolution, the case falls within an
exception to the "stay put" provision for when the parties
"otherwise agree" on a "stay put" placement.  Finally, the court
stated that whatever interests the Verhoevens had in seeking review
of the hearing officer's placement decision fell outside the
parameters of the present complaint and should be pursued by filing
a separate action.
         On October 30, 1998, the Verhoevens filed the present
appeal of the district court's denial of their request for interim
injunctive relief.  Also on October 30, 1998, the Verhoevens filed
a complaint for review of the hearing officer's October 2, 1998
order in the State of Maine Superior Court for Cumberland County.  
Brunswick subsequently removed the complaint to the United States
District Court for the District of Maine, and the case was assigned
to Judge Carter.  To date, the case before Judge Carter appealing
the hearing officer's due process decision has not been resolved.
                           DISCUSSION
I.  The Standard of Review
         Due in part to ambiguity in the district court's order,
the parties disagree about the appropriate standard of review.  The
Verhoevens argue that the district court's order denying their
request for injunctive relief as moot must be reviewed de novo
because the mootness of the request is an issue of law.  The
Verhoevens also cite two cases for the proposition that review of
the denial of a "stay put" injunction is plenary, because the
entitlement to an automatic injunction under the "stay put"
provision is a question of law.  See Woods v. New Jersey Department
of Education, 20 IDELR 439, 440 (3d Cir. 1993) (unpublished decision
engaging in plenary review of the issue of whether a particular
educational placement is the student's "current educational
placement" under the "stay put" provision); Leonard v. McKenzie, 869
F.2d 1558, 1564 (D.C. Cir. 1989) (reviewing de novo the denial of
a "stay put" injunction on the merits).
         Brunswick responds by arguing that the standard of review
of a district court's denial of a request for a preliminary
injunction is abuse of discretion.  See, e.g., Starlight Sugar, Inc.
v. Soto, 114 F.3d 330, 331 (1st Cir. 1997) (reviewing  issuance of
a preliminary injunction under a "deferential" standard, such that
the court will not intervene absent a showing that the lower court
"misapprehended the law or committed a palpable abuse of
discretion").  Brunswick also cites cases of its own for the
proposition that the applicable standard of review for "stay put"
orders is abuse of discretion.  See St. Tammany Parish School Bd.
v. Louisiana, 142 F.3d 776, 782-83 (5th Cir.) (reviewing orders
relating to placement during the pendency of the litigation for
abuse of discretion), cert. dismissed, 142 L.Ed.2d 490 (1998);  
Susquenita School Dist. v. Raelee S., 96 F.3d 78, 81 (3d Cir. 1996)
(reviewing the district court's "stay put" order for abuse of
discretion).
         In the present case, the district court did not purport
to reach the merits of the "stay put" dispute; it denied the motion
as moot.  However, the district court then appeared to reach the
merits of the "stay put" issue in finding that "this case falls
within the exception to the automatic 'stay put' provision" of 20
U.S.C.  1415(j).  The district court concluded that because the
Verhoevens agreed to submit the "stay put" issue to the hearing
officer, they "otherwise agree[d]" to depart from the "stay put"
placement during the pendency of the proceedings.  Exactly how this
finding and conclusion lead to or flow from a mootness determination
is not explained.
         As a result of this ambiguity, each party offers various
versions of what the district court might have ruled.  We address
these possibilities in turn, using varying standards of review.  To
the extent that what we are reviewing is the district court's
determination that the Verhoevens' request is moot, we review de
novo.  See In re Arnold & Baker Farms, 85 F.3d 1415, 1419 (9th Cir.
1996) ("Mootness is a jurisdictional issue which we review de
novo."), cert. denied, 519 U.S. 1054 (1997); F.E.R. v. Valdez, 58
F.3d 1530, 1532-33 (10th Cir. 1995) ("We review the question of
mootness de novo as a matter of federal jurisdiction.").  And to the
extent that what we are reviewing is a legal issue under the "stay
put" provision, such as the determination of what constitutes P.J.'s
"current educational placement," we also review de novo.  See
Leonard, 869 F.2d at 1564.  But to the extent that we are reviewing
the district court's determinations regarding the applicability of
the "stay put" provision that constitute mixed questions of law and
fact, our review is more deferential.  In the absence of a mistake
of law, we must accept the district court's resolution of mixed
questions so long as the court's conclusions are not clearly
erroneous on the record as a whole.  See Hampton School District v.
Dobrowolski, 976 F.2d 48, 52 (1st Cir. 1992) (applying this standard
in reviewing a district court's determination of whether an
educational placement was appropriate as a mixed question of law and
fact).
II.  The District Court's Mootness Determination
         The Verhoevens raise -- and challenge -- two separate
bases upon which the district court could have relied in finding the
Verhoevens' request for a "stay put" injunction to be moot.  First,
they argue that the district court could have found that the request
was moot because the Verhoevens only requested "stay put" relief
during the pendency of administrative proceedings, which ended with
the hearing officer's decision on October 2, 1999.  Second, they
argue that the district court could have found that the Verhoevens
forfeited their right to judicial review of the "stay put" issue by
submitting the issue to a hearing officer.
         A.  Duration of the Relief Requested
         Brunswick and the Verhoevens both suggest that the
district court may have found that the request was moot because the
Verhoevens only requested relief during the pendency of the
administrative proceedings, and not through any judicial action
appealing those proceedings.  In both their Verified Complaint and
their Motion for an Automatic Preliminary Injunction, the Verhoevens
requested that P.J. be allowed to remain at SMLC "pending the
completion of due process proceedings to challenge" Brunswick's
placement decision.  
         Nothing in the "stay put" provision limits the
availability of "stay put" injunctions to the duration of the
administrative hearings.  As noted by the Verhoevens, section
1415(j) provides for "stay put" placement "during the pendency of
any proceedings conducted pursuant to this section."  Because "this
section" -- section 1415 -- makes available both administrative
proceedings and judicial actions to appeal the administrative
determination, subsection 1415(j) provides for "stay put" placement
throughout both the administrative and judicial proceedings
challenging a placement decision.  See Doe v. Brookline School
Committee, 722 F.2d 910, 915 (1st Cir. 1983) ("'[stay put provision]
is designed to preserve the status quo pending resolution of
administrative and judicial proceedings under the Act.'"), quoting
Doe v. Anrig, 692 F.2d 800, 810 (1st Cir. 1982), disagreed with on
other issues by Doe v. Brookline School Committee, 722 F.2d 910; see
also Honig v. Doe, 484 U.S. 305, 312 (1988).   
         Brunswick argues that the availability of "stay put"
relief during judicial proceedings is of no consequence because the
Verhoevens did not ask for it.  We do not agree that the Verhoevens
failed to ask for such relief.  The Verhoevens asked for "stay put"
relief under  1415(j), which provides for relief during both
administrative and judicial proceedings, and they asked for "stay
put" relief pending the completion of "due process proceedings,"
which are not limited to administrative due process hearings in
either the statute or the complaint.  In the Verhoevens' motion,
they cited Anrig for its statement that the "stay put" provision is
designed to preserve the status quo during administrative and
judicial proceedings under the IDEA.  If there had been any
confusion or ambiguity as to what the Verhoevens were requesting,
it was surely eliminated when the Verhoevens filed their reply to
Brunswick's objections to the request for a preliminary injunction.  
In that October 5, 1998 reply, the Verhoevens made clear that they
were requesting injunctive relief in the form of "stay put"
placement during both administrative due process hearings and any
judicial appeal of the hearing officer's decision.  Thus, it was
error for the district court to deny the Verhoevens' request as moot
to the extent that it did so because it believed that the Verhoevens
only sought the narrower form of relief.   
                       B.  The Effect of Allowing the Hearing Officer to Rule
             on the "Stay Put" Issue
         The Verhoevens offer an alternative interpretation of the
district court's finding of mootness: the district court may have
found that the Verhoevens' motion was moot because they forfeited
their right to a judicial determination of the "stay put" issue by
first submitting the issue to a hearing officer.  The Verhoevens
derive this interpretation from the district court's finding that
the Verhoevens' decision to submit the "stay put" issue to the
hearing officer for resolution placed this case within the exception
to the "stay put" provision for when the educational agency and the
parents "otherwise agree."
         This explanation of the district court's mootness
determination is lacking.  A finding that the Verhoevens' actions
amounted to an agreement that fits within the exception to the "stay
put" provision actually resolves the "stay put" injunction motion
on its merits; it does not render the motion moot.  Also, the
district court did not state that the motion was moot due to the
hearing officer's August 28, 1998 decision resolving the "stay put"
issue; it stated that the motion was moot due to the hearing
officer's October 2, 1998 decision, which resolved the overall
placement challenge.  Therefore, this proffered explanation could
not have been the basis for the district court's mootness
determination.
                       C.  Conclusions Regarding the Mootness of the
             Verhoevens' Request
         In sum, we cannot agree with the district court that the
Verhoevens' motion for a "stay put" injunction was mooted by the
hearing officer's October 2, 1998 decision on the merits of the
Verhoevens' placement challenge.  Nor do we find that the motion was
mooted by the hearing officer's August 28, 1998 "stay put" decision
in favor of Brunswick.  Therefore, the district court erred in
denying the Verhoevens' motion as moot.
III.  Merits of the Verhoevens' Request for a "Stay Put" Injunction
         As noted above, it appears that the district court
reached the merits of the Verhoevens' request for a "stay put"
injunction, despite its mootness conclusion.  Therefore, we treat
the district court's decision on the merits as an alternative ground
for the denial and review it accordingly.

                       A.  The District Court's Conclusion That the Parties
             Satisfied the Exception to the "Stay Put" Provision
             By "Otherwise Agree[ing]" to Allow the Hearing
             Officer to Choose the Interim Placement
         Even though the district court's findings and rationale
regarding mootness are somewhat murky, its ruling on the merits of
the injunction request could not be more clear.  The district court
concluded that because the Verhoevens agreed to submit the "stay
put" issue to the hearing officer, the case falls within the
"otherwise agree" exception to the "stay put" provision.  We do not
find this conclusion to be reversible error.
         As noted above, section 1415(j) provides that the interim
placement during proceedings challenging the child's regular
placement shall be the child's current educational placement,
"unless the . . . educational agency and the parents otherwise
agree."  20 U.S.C.  1415(j).  The district court found that
Brunswick and the Verhoevens "otherwise agree[d]" to let the hearing
officer determine the interim placement.  Nothing in section 1415(j)
requires the parties to "otherwise agree" on a particular interim
placement for the exception to apply; the exception apparently may
apply if the parties "otherwise agree" to let a third party decide
the interim placement.  The question is whether the parties in fact
did that here.
         There is no dispute that the parties submitted the
interim placement issue to the hearing officer, but that does not
necessarily mean that they agreed to let her choose the interim
placement within the meaning of the "otherwise agree" exception.  
There is a substantial difference between: (1) agreeing to allow the
hearing officer to choose the interim placement and thus opting out
of the "stay put" presumption under  1415(j), and (2) agreeing to
have the hearing officer, as an initial adjudicator, determine what
is the proper "stay put" placement under  1415(j).  The district
court found that the former occurred.
         Offering the affidavit of Carolyn Crowell, Brunswick's
Director of Special Services, Brunswick argued to the district court
that the parties agreed at an August 13, 1998 pre-hearing conference
on a process for determining the interim placement, thus satisfying
the "otherwise agree" exception.  Crowell declared that the parties
agreed to let the hearing officer resolve the "stay put" issue and
did so because of the rapidly approaching first day of school at
Brunswick High School.  Brunswick argued that the Verhoevens reneged
on this agreement by refusing to be bound by the hearing officer's
decision and by filing the motion for an injunction in district
court.  In response, the Verhoevens argued -- and currently argue --
that they never agreed to be bound by or to forfeit review of the
hearing officer's interim placement decision.  We are faced with the
same dispute facing the district court:  one party (Brunswick) who
claims that the parties viewed the hearing officer as a third party
that they empowered to decide P.J.'s interim placement and one party
(the Verhoevens) who claims that they, at least, viewed the hearing
officer as merely the first adjudicator of the "stay put" issue.
         Confronted with this dispute, the district court sided
with Brunswick and found that the parties "otherwise agree[d]" to
let the hearing officer decide the interim placement, and we have
no basis for finding this determination to be clearly erroneous.  
As discussed above, in the absence of a mistake of law, we must
accept the district court's resolution of mixed questions of law and
fact so long as the court's conclusions are not clearly erroneous
on the record as a whole.  See Hampton School District, 976 F.2d at
52.  There is no claim that the district court made a mistake of law
in this context.  Rather, the Verhoevens' claim here is that the
district court found that the parties made an agreement which did
not in fact exist.  The existence of such an agreement is supported
by Crowell's affidavit, in which she stated that the parties agreed
on August 13, 1998 to allow the hearing officer to resolve the "stay
put" dispute due to the impending first day of school.   
         Context lends further support to this interpretation.  
The agreement to let the hearing officer resolve the issue was made
just before the school year was about to begin, seemingly to
facilitate a stable start to the school year for P.J.  Without a
definitive resolution, both sides would have faced the prospect of
court litigation as to the stay put issue.  Letting the hearing
officer settle the matter was a reasonable solution.
         The Verhoevens offered no evidence to show that this
agreement was not of the type envisioned by the "otherwise agree"
exception and merely asserted in their briefs that their
interpretation is the correct one.  Faced with competing
interpretations supported by the statements of the parties or their
representatives, the district court made a factual determination,
which we as an appellate court are in a "perilously poor position
to second-guess."  Rivera-Gmez v. Castro, 900 F.2d 1, 4 (1st Cir.
1990).  As a result, we do not find the district court's conclusion
regarding the existence of an agreement under section 1415(j) to be
clearly erroneous, and we therefore uphold the district court's
denial of the motion for an injunction.
                       B.  Leonard v. McKenzie and Temporary Placements as the
             "Current Educational Placement" Under 20 U.S.C.
              1415(j)
         Even if the district court had erred in finding that the
submission of the "stay put" issue to the hearing officer satisfied
the "otherwise agree" exception to the "stay put" presumption, we
would be inclined to uphold the district court's denial of the
Verhoevens' request for another reason.  The placement at SMLC --
the placement that the Verhoevens believe should prevail during the
pendency of their challenge to the IEP returning P.J. to public
school -- was never intended to be anything more than a temporary
placement.  Ordering Brunswick to fund a private placement at SMLC
during the challenge to the IEP is not the type of maintenance of
the status quo that section 1415(j) envisions.  To the contrary, it
would be an extension of this temporary placement to a degree well
beyond the parties' intentions at the time of the 1997 settlement
agreement.
         The parties agreed in the 1997 settlement agreement to
temporarily place P.J. at SMLC "only through the end of the 1997-
1998 school year in June 1998."  They agreed that P.J.'s subsequent
placements would be determined at a later date, but they agreed that
the purpose of the temporary SMLC placement was to transition P.J.
to placement at Brunswick High School.  The parties then expressed
their expectation that P.J. would return to the Brunswick public
school system for the 1998-99 school year.  Under these
circumstances, it cannot be said that P.J.'s "current educational
placement" on July 20, 1998 -- the date the Verhoevens filed their
challenge to the IEP reached on June 1, 1998 -- was the recently
ended SMLC placement.
         A similar arrangement was presented in Leonard v.
McKenzie, 869 F.2d 1558 (D.C. Cir. 1989).  In that case, Brandon
Leonard was placed in Prospect Learning Center, a public elementary
school operated by the District of Columbia Public Schools ("DCPS").  
Brandon's parents challenged that placement, seeking placement at
the private Lab School of Washington.  Brandon's parents enrolled
him in the Lab School during the challenge proceedings.  A hearing
officer determined that both school programs were appropriate
placements, meaning that Brandon's placement should be the Prospect
Learning Center, but the hearing officer ordered DCPS to pay for
Brandon's placement in the Lab School for the 1985-86 school year
anyway due to a number of procedural violations committed by DCPS.  
In the order, the hearing officer stated that DCPS should plan for
Brandon's return to Prospect Learning Center or another public
school in the DCPS system for the 1986-87 school year.
         In July of 1986, DCPS placed Brandon at Prospect Learning
Center for the 1986-87 school year.  Brandon's parents immediately
requested a due process hearing to challenge that placement.  The
hearing officer then reaffirmed the earlier determination that
Prospect Learning Center was an appropriate placement and therefore
upheld DCPS's decision to place Brandon at Prospect Learning Center.  
The Leonards filed suit in federal district court, challenging the
hearing officer's placement decision.  The Leonards sought an
injunction compelling DCPS to pay Brandon's tuition at the private
Lab School during the litigation.  The district court denied the
request for injunctive relief during the litigation and later
affirmed the hearing officer's decision on the merits.   
         On appeal, the D.C. Circuit rejected the Leonards' claim
that the Lab School was Brandon's "current educational placement"
at the time the challenge was filed.  See id. at 1564.  The court
stated: (1) that it was clear to all parties that the Lab School
placement was for the 1985-86 school year only, and (2) that the
hearing officer encouraged the parties to prepare for a transition
back to Prospect Learning Center.  See id.  From this, the court
determined that the Leonards were on notice that the Lab School
would cease to be the "current educational placement" once the 1985-
86 school year ended.  See id.  Accordingly, the court declined to
compel DCPS to fund Brandon's interim placement at the Lab School
because the Lab School was not the proper "stay put" placement under
section 1415(j).  See id.
         The present situation is quite analogous to the situation
presented in Leonard.  Just as the hearing officer's statements in
Leonard put the parties on notice that the placement at the Lab
School was temporary and would cease at the end of the 1985-86
school year, the parties' 1997 settlement agreement in the present
case made it quite clear that the SMLC placement was temporary and
would cease at the end of the 1997-98 school year.  In fact, that
was precisely the parties' intent.  And just as the D.C. Circuit
found that Brandon's placement at the Lab School was not the
"current educational placement" because it terminated at the end of
the 1985-86 school year, we are persuaded that we should hold
similarly that P.J.'s placement at SMLC was not the "current
educational placement" because it terminated at the end of the 1997-
98 school year.
         The policy behind section 1415(j) supports an
interpretation of "current educational placement" that excludes
temporary placements like P.J.'s SMLC placement.  Section 1415(j)
"is designed to preserve the status quo pending resolution of
administrative and judicial proceedings under the Act."  Anrig, 692
F.2d at 810.  The preservation of the status quo ensures that the
student remains in the last placement that the parents and the
educational authority agreed to be appropriate.  However, in the
case of P.J.'s temporary placement at SMLC, Brunswick and the
Verhoevens never agreed that P.J. would be placed at SMLC beyond
June 1, 1998.  To the contrary, the parties expressly agreed that
P.J. would only be placed at SMLC during the 1997-98 school year.  
Therefore, to maintain P.J. at SMLC during the pendency of the
Verhoevens' challenge would actually change the agreed-upon status
quo, not preserve it.  Thus, because a reading of "current
educational placement" that includes the temporary SMLC placement
at issue here would thwart the purpose of section 1415(j), we
decline to adopt such a reading.
         We have addressed this issue at some length, even though
not dispositive here, because we think it important that parents be
given fair warning that an explicitly understood temporary placement
is at least a risky basis for claiming "stay put" protection.  
Still, we do not formally resolve the issue in the abstract; it is
not necessary to do so here, there are numerous factual variations
that could affect the outcome, and the law in this difficult area
is still evolving.  Of course, in the future the matter can be
resolved in relation to temporary placements by explicit language
in such an agreement designating the stay put placement.  
                       C.  Conclusions Regarding the Merits of the Verhoevens'
             Request
         In sum, we do not disturb the district court's conclusion
that the parties "otherwise agree[d]" to allow the hearing officer
to determine P.J.'s interim placement, and even if we did find this
conclusion to be in error, we would be reluctant to find that P.J.'s
"current educational placement" at the time of the challenge was his
recently-concluded temporary placement at SMLC.  Therefore, we hold
that the district court properly denied the Verhoevens' request for
a "stay put" injunction compelling Brunswick to fund an interim
placement at SMLC during the pendency of the Verhoevens' challenge
to the June 1, 1998 IEP.

                           CONCLUSION
         Based on the foregoing, we AFFIRM the district court's
denial of the Verhoevens' motion for an automatic preliminary
injunction.

</body>

</html>